SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppard.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppard.com
DANIEL J. BIRMINGHAM, Cal Bar No. 357351
dbirmingham@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

SAMUEL Z. HYAMS-MILLARD, Cal Bar No. 317941
shyams-millard@sheppard.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

MARK RATWAY (*pro hac vice forthcoming*)
mratway@sheppard.com
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: 469.391.7457
Facsimile: 469.391.7400

Attorneys for Defendant Pinterest, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

CHRISTIAN CALCINES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PINTEREST, INC.,

Defendant.

Case No. 2:26-cv-02154-FMO-RAO

**DEFENDANT PINTEREST, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Date: June 18, 2026
Time: 10:00 a.m.
Crtrm: 6D

Complaint Served: March 10, 2026

Judge: Hon. Fernando M. Olguin
Magistrate: Hon. Rozella A. Oliver

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on June 18, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Fernando M. Olguin, in Courtroom 6D, 6th Floor, Defendant Pinterest, Inc. ("Defendant" or "Pinterest") will and hereby does move to dismiss the Complaint filed by Plaintiff Christian Calcines ("Plaintiff") in this action. Pinterest's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

Dated: May 1, 2026

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *<u>/s/ Wynter L. Deagle</u>*

WYNTER L. DEAGLE
ANNE-MARIE D. DAO
SAMUEL Z. HYAMS-MILLARD
DANIEL J. BIRMINGHAM
MARK RATWAY (*pro hac vice forthcoming*)
Attorneys for Defendant Pinterest, Inc.

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | 5 |
| I. INTRODUCTION | 11 |
| II. BACKGROUND AND RELEVANT FACTS | 12 |
| III. LEGAL STANDARDS | 13 |
| A. Federal Rule of Civil Procedure 12(b)(1) | 13 |
| B. Federal Rule of Civil Procedure 12(b)(6) | 13 |
| IV. PLAINTIFF FAILS TO ALLEGE INJURIES-IN-FACT SUFFICIENT TO CONFER STANDING UNDER ARTICLE III | 14 |
| A. Plaintiff's Alleged Harms Are Not An Actionable Injury | 15 |
| 1. Plaintiff Fails to Allege a Privacy Interest | 15 |
| 2. Plaintiff Fails to Allege a Highly Offensive Intrusion | 16 |
| B. Plaintiff Fails to Allege Standing Based on Statutory Violations | 19 |
| V. PLAINTIFF FAILS TO STATE ANY CLAIMS | 19 |
| A. Plaintiff's Intrusion Upon Seclusion Claim Fails | 20 |
| 1. Plaintiff Fails to Allege a Reasonable Expectation of Privacy | 20 |
| 2. Plaintiff Fails to Allege an Egregious or Highly Offensive Breach of Norms | 20 |
| B. Plaintiff's Section 631(a) Claim Fails | 21 |
| 1. Plaintiff Fails to Allege Pinterest Intercepted the "Contents" of His Communications | 22 |
| 2. Plaintiff Fails to Allege an Interception in Transit | 23 |
| C. Plaintiff's Section 632 Claim Fails | 25 |
| 1. Plaintiff Does Not Allege a Confidential Communication | 25 |
| 2. Plaintiff Does Not Allege Recording or Eavesdropping | 26 |
| D. Plaintiff's Section 638.51(a) Claim Fails | 27 |
| E. Plaintiff's Unfair Competition Law Claim Fails | 29 |
| F. Plaintiff's Wiretap Act Claim Fails | 30 |

VI. LEAVE TO AMEND SHOULD BE DENIED ....................................................31
VII. CONCLUSION ..................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adler v. Community.com, Inc.*
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 23

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 13, 26

*Bass v. Facebook, Inc.*
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 29

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 13

*Bly-Magee v. California*
236 F.3d 1014 (9th Cir. 2001) .......... 31

*Cody v. Ring LLC*
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 21

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 22, 23

*Crano v. Sojern, Inc.*
2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 24, 25

*Diamond Alt. Energy, LLC v. Env't Prot. Agency*
606 U.S. 100 (2025) .......... 14

*In re DoubleClick Inc. Priv. Litig.*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 31

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) .......... 17

*Farst v. AutoZone, Inc.*
700 F. Supp. 3d 222 (M.D. Pa. 2023) .......... 20

*Gilligan v. Experian Data Corp.*
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 29

*In re Google Assistant Priv. Litig.*
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*
806 F.3d 125 (3d Cir. 2015)....................31

*In re Google Priv. Pol'y Litig.*
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................21

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................23, 31

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. July 18, 2022)....................21, 30

*Harris v. KM Indus., Inc.*
980 F.3d 694 (9th Cir. 2020)....................13

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272 (2009)....................15, 20, 21

*Hernandez v. Select Portfolio, Inc.*
2015 WL 3914741 (C.D. Cal. June 25, 2015)....................30

*Herzman v. Smile Brands Inc.*
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)....................16

*Hill v. NCAA*
7 Cal. 4th 1 (1994)....................17

*Hubbard v. Google LLC*
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................20

*Hughes v. Vivint, Inc.*
2024 WL 5179916 (C.D. Cal. July 12, 2024)....................16

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................21

*King v. Hard Rock Cafe Int'l (USA), Inc.*
2025 WL 1635419 (E.D. Cal. June 9, 2025)....................23, 26, 30

*Kishnani v. Royal Caribbean Cruises, Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................18, 28

*Kisil v. Illuminate Educ., Inc.*
No. 23-4114, 2025 WL 2589000 (9th Cir. Sep. 8, 2025) .......... 14

*Lau v. Gen Digital Inc.*
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .......... 26

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014) .......... 13

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 21, 29

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) .......... 14

*Mastel v. Miniclip SA*
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 31

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 16

*Mirmalek v. Los Angeles Times Commc'ns LLC*
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 28

*Mitchener v. CuriosityStream, Inc.*
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 28

*Murthy v. Missouri*
603 U.S. 43 (2024) .......... 14

*Myers v. Dick's Sporting Goods, Inc.*
2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) .......... 18

*Nayab v. Cap. One Bank (USA), N.A.*
942 F.3d 480 (9th Cir. 2019) .......... 15

*In re Nickelodeon Consumer Priv. Litig.*
827 F.3d 262 (3d Cir. 2016) .......... 31

*Pena v. Gamestop*
2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .......... 31

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... 14, 15, 16, 17, 19

*Price v. Headspace, Inc.*
2025 WL 1237977 (Cal. Super. Ct. Apr. 1, 2025) ........................................... 28

*Rodriguez v. Brushfire Records*
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025).................................................. 16

*Rodriguez v. Culligan Int'l Co.*
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025).................................................... 19

*Rodriguez v. Google LLC*
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..................................................... 24

*In re Saldana*
122 F.4th 333 (9th Cir. 2024)........................................................................... 27

*Schulman v. Group W Prods., Inc.*
18 Cal. 4th 200 (1998)...................................................................................... 15

*Semien v. PubMatic Inc.*
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ..................................................... 17

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*
733 F.3d 1251 (9th Cir. 2013).......................................................................... 13

*Shah v. Fandom, Inc.*
754 F. Supp. 3d 924 (N.D. Cal. Oct. 9, 2025).................................................. 28

*Shah v. MyFitnessPal, Inc.*
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ............................................... 23, 25

*Sisti v. Bosley*
No. 2:25-cv-10669-JFW-DFM (C.D. Cal. Apr. 27, 2026)................................ 16

*Smith v. Maryland*
442 U.S. 735 (1979) .......................................................................................... 28

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020)............................................................................. 29

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ..................................................................................... 13, 19

*Tash v. Vision Serv. Plan*
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026).................................................... 18

*Tavernetti v. Super. Ct.*
583 P.2d 737 (Cal. 1978)....................21

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024)....................20

*Timothee v. Meta Platforms, Inc.*
2026 WL 1130363 (N.D. Cal. Apr. 27, 2026)....................18

*Torres v. Prudential Fin., Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....................25

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021)....................13, 14, 19

*In re USA Today Co., Inc. Internet Tracking Litig.*
2026 WL 932655 (N.D. Cal. Apr. 6, 2026)....................16, 29

*Yale v. Clicktale, Inc.*
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)....................23

*Yockey v. Salesforce, Inc.*
745 F. Supp. 3d 945 (N.D. Cal. 2024)....................26

*Yoon v. Lululemon USA, Inc.*
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................23

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014)....................22, 23, 31

*In re Zynga Priv. Litig.*
750 F.3d at 1101–02....................24

Statutes

18 U.S.C. § 2510(8)....................30

18 U.S.C. § 2511(2)(d)....................31

Cal. Bus. & Prof. Code § 17200....................29

Cal. Bus. & Prof. Code § 17204....................29

Cal. Penal Code § 629.50....................28

Cal. Penal Code § 631....................28

Cal. Penal Code § 631(a) ........ 21, 22, 23
Cal. Penal Code § 632(a) ........ 25
Cal. Penal Code § 632(c) ........ 25
Cal. Penal Code § 638.50(b) ........ 27
Cal. Penal Code § 638.51(a) ........ 27
Cal. Penal Code § 638.52 ........ 28
Cal. Penal Code § 638.53 ........ 28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Christian Calcines's claims rest on the bare allegation that 26 websites—20 of which he fails to identify—installed code known as the Pinterest Tag, which allegedly collected and transmitted information about him to Pinterest. That allegation, without more, cannot sustain his claims, which fail for two independent reasons. First, he lacks Article III standing. Second, each of his claims fails as a matter of law.

Plaintiff lacks Article III standing because his claims rest entirely on hypothetical harms drawn from his counsel's investigation—not on any concrete injury he personally experienced. Plaintiff does not identify any sensitive or embarrassing information that Pinterest collected about him. Nor does he identify the "at least 26 websites" he allegedly visited or detail *his* activities on any of them. Instead, he cobbles together examples drawn from his counsel's investigation and asks this Court to treat that as his own concrete injuries. Under Ninth Circuit authority, these allegations fail to establish Article III standing.

Plaintiff's claims also fail as a matter of law as he asks this Court to accept a remarkable proposition: that visiting publicly accessible, commercial websites of companies that voluntarily installed the Pinterest Tag gives rise to six, separate privacy claims against Pinterest. It does not.

Plaintiff's claims also fail as a matter of law because his remarkable proposition—that visiting publicly accessible, commercial websites of companies that voluntarily installed the Pinterest Tag gives rise to six, separate privacy claims against Pinterest—does not give rise to any actionable privacy claim. First, his intrusion upon seclusion claim cannot clear the "high bar" of alleging a highly offensive intrusion: Plaintiff identifies no embarrassing, invasive, or otherwise sensitive information that Pinterest allegedly collected about him, much less the required "egregious breach of social norms." Second, his separate California Invasion of

Privacy Act ("CIPA") claims for wiretapping and eavesdropping fail because the data categories he identifies—such as device information, browser type, IP addresses, and website visits—are "record information," not the "contents" of any communication, and the specific examples he offers derive from his counsel's investigation rather than his own experience. Third, his CIPA pen register claim rests on an interpretation that is contrary to the plain text of the statute, which defines a "pen register" as a device that records routing information "but not the contents of a communication"—yet Plaintiff simultaneously alleges the Pinterest Tag collects both. Fourth, his Unfair Competition Law ("UCL") claim lacks the economic injury required for statutory standing because he does not allege that he lost money or property as a result of Pinterest's conduct. And finally, his Electronic Communications Privacy Act ("Wiretap Act") claim fails because he does not allege collection of the contents of his communications and the one-party consent exception applies. Because Plaintiff's claims are fundamentally deficient (and not just under-pleaded), the Complaint should be dismissed with prejudice.

## II. BACKGROUND AND RELEVANT FACTS

Pinterest is a "visual discovery engine for finding ideas like recipes, home and style inspiration, and more."[1] According to Plaintiff, Pinterest allows users to browse, save, and share images organized into themed collections. (Compl. ¶ 10.)

Plaintiff's allegations and claims focus on Pinterest's tools that are dedicated to improving user experience and delivering desirable content to users, including the Pinterest Tag. (*E.g.*, *id.* ¶¶ 1, 19–22, 24.) The Pinterest Tag is a piece of code that third-party website operators choose to install on their websites. (*Id.* ¶ 27.) Plaintiff alleges the Pinterest Tag is capable of collecting several categories of data from website visitors, including: browser cookies, IP addresses, device and browser

[1] *All About Pinterest*, PINTEREST, https://help.pinterest.com/en/guide/all-about-pinterest (last visited May 1, 2026).

information, hashed email addresses, and URLs of pages visited. (*See, e.g.*, Compl. ¶¶ 25, 33–39, 40, 81, 88–96.)

As to his own experience, Plaintiff alleges he "visited at least 26 websites where Defendant's Pinterest Tag was present," naming only six: Zillow.com, WesternUnion.com, cvs.com, healthline.com, hrblock.com, and americanexpress.com. (*Id.* ¶ 139.) He does not identify the remaining 20 websites, and additionally fails to allege what he did on any of these websites—he does not allege that he searched for a property, transferred money, researched a medical condition, prepared tax documents, or reviewed financial statements. (*See id.* ¶¶ 139–45.) Nor does he identify any specific URL visited, specific search query entered, or sensitive information that Pinterest collected about him. (*See id.*)

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A complaint must be dismissed under Rule 12(b)(1) if the allegations are "insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Article III standing is a jurisdictional requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff bears the burden of "demonstrat[ing] standing for each claim that [he] press[es] and for each form or relief that [he] seeks . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

### B. Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Nor do "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media*

*Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## IV. PLAINTIFF FAILS TO ALLEGE INJURIES-IN-FACT SUFFICIENT TO CONFER STANDING UNDER ARTICLE III

Plaintiff lacks Article III standing because he does not plead facts establishing an injury-in-fact. His allegations do not meet the required benchmark of intrusion upon seclusion because he failed to allege any embarrassing, invasive, or otherwise sensitive information that Pinterest collected about him. His asserted statutory violations also do not confer standing. On that basis alone, the Complaint must be dismissed.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "[T]he irreducible constitutional minimum of standing" requires "injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111 (2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff must "demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" *Id.* (citation omitted). A "concrete" injury must be "real, and not abstract," not merely "procedural." *TransUnion LLC*, 594 U.S. at 424, 440 (citation omitted).

To determine whether an injury is concrete, the court must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (emphasis in original). Because "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms," *id.* at 792, claims alleging a privacy harm "must be 'benchmarked' to one of four distinct privacy torts": intrusion upon seclusion, appropriation of name or likeness, public disclosure of private facts, and defamation/false light. *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000, at *1 (9th Cir. Sep. 8, 2025). When a plaintiff alleges improper tracking of website interactions, courts

assess whether alleged harms can be benchmarked to intrusion upon seclusion. *See Popa*, 153 F.4th at 791.[2]

Plaintiff fails on both fronts.

**A. Plaintiff's Alleged Harms Are Not An Actionable Injury**

"To show intrusion upon seclusion, a plaintiff must show (1) 'an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, (2) of a kind that would be highly offensive to a reasonable man.'" *Popa*, 153 F.4th at 791 (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019)) (citation modified). The first element requires an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source"; the second focuses on the "highly offensive" nature of the intrusion, factoring in "'the degree and setting of the intrusion, and the intruder's motives and objectives.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (first quoting *Schulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998); then quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). As set forth below, Plaintiff fails to satisfy either element.

***1. Plaintiff Fails to Allege a Privacy Interest***

Plaintiff cannot allege an interference with information relating to his "person" or "private affairs or concerns" because Plaintiff does not identify his activities on any websites or any information he allegedly shared.

Plaintiff devotes one paragraph to his actual "experience." (Compl. ¶ 139.) He alleges he "*visited* at least 26 websites where Defendant's Pinterest Tag was present," naming only six. (*Id.* (emphasis added).) He does not allege that he searched for, typed, clicked on, or purchased anything on those websites, and alleges only vague "communications with the websites" without any supporting facts. (*See id.* ¶¶ 139–

[2] Plaintiff does not allege a public disclosure or, misappropriation of his name or likeness, or defamation/false light.

40.)

These general allegations of website visits fail to allege a privacy interest. *See* Statement of Decision on Defs.' Mot. to Dismiss Pl.'s 1st Am. Class Action Compl. at 4–5, ECF No. 70, *Sisti v. Bosley*, No. 2:25-cv-10669-JFW-DFM (C.D. Cal. Apr. 27, 2026) (holding plaintiff lacked Article III standing when he alleged only that he filled out a hair-loss treatment scheduling form but failed to allege any information entered into the form was his personal, health data or that any information, broadly, was actually shared with third-parties); *Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (holding plaintiff could not show harm he suffered was similarly to the privacy harms recognized in *Popa* because the complaint did "not contain any specific allegations explaining what information was disclosed to Defendant, what information Defendant transmitted to Google, and how any such information was linked to him as an identifiable individual"); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4–5 (C.D. Cal. July 12, 2024) (no standing where plaintiff failed to plead what personal information of hers was collected); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (dismissing for lack of standing where "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected"); *see also In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (holding plaintiff who (i) alleged only unprotected disclosures like IP address and location, time, and browser and connection type and (ii) lacked adequate specificity in alleging browser behavior and preferences failed to plead a cognizable injury); *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (allegations that plaintiff "visited" a website showed, at most, tracking of IP addresses and "device identifiers," which was insufficient to "cause the kind of harm that can be vindicated in federal court").

### ***2. Plaintiff Fails to Allege a Highly Offensive Intrusion***

Plaintiff also fails to plausibly allege a highly offensive intrusion. "Actionable

invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. NCAA*, 7 Cal. 4th 1, 37 (1994). Whether conduct is "highly offensive" requires "holistic consideration" of factors including "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

In the web-tracking context, whether an intrusion is highly offensive depends on the information collected. In *Popa*, the Ninth Circuit held that a pet store website's collection of 30 categories of information—including the date of visit, device and browser type, operating system, country, mouse movements, screen swipes, text inputs, and scroll depth—did not constitute a concrete injury because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information" collected. 153 F.4th at 786–87, 791. The conduct was "most similar to a store clerk's observing shoppers." *Id.*

By contrast, courts have found standing where tracking involves sensitive personal information. In *In re Facebook*, the Ninth Circuit found a concrete injury where plaintiffs alleged Facebook collected and correlated browsing histories with their personal and sensitive information—including employment history and religious affiliations—to build "cradle-to-grave" profiles. 956 F.3d at 598–99. Similarly, courts have found standing where tracking involves "sensitive medical or financial information." *See Popa*, 153 F.4th at 791; *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026) (finding standing where defendant intercepted communications that could include "health status and treatment, travel plans, political affiliation, sexual orientation, and more.").

Here, unlike in cases finding concrete injuries, Plaintiff fails to identify any "embarrassing, invasive, or otherwise private information" collected by Pinterest

during his website visits. In seeming realization of this deficiency, Plaintiff sprinkles buzzwords throughout the Complaint—alleging he visited cvs.com and healthline.com (*e.g.*, Compl. ¶¶ 139, 230) and vaguely asserting that communications regarding "health concerns" were collected, without alleging he shared any sensitive medical information. (*Id.* ¶ 230.) Nothing alleged provides the Court with a basis to infer that information about Plaintiff's website activities—if collected—would result in an egregious breach of social norms.

Plaintiff's attempts to cast the alleged collected information as financial also fall flat. His allegations surrounding Western Union are based on counsel's investigation, not Plaintiff's experience. (*Id.* ¶¶ 122, 136–37.) While Plaintiff identifies how the Pinterest Tag *theoretically functions* on Western Union's website, he does not allege that he used the website to transfer money or that he provided any personal, financial information. Because he has not alleged actual collection of *his* sensitive information, he has not alleged a concrete injury. *See Kishnani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("[T]hough Plaintiff alleges that Defendants . . . *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into concrete harm to *him*." (emphasis in original)); *Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (holding that a plaintiff failed to allege Article III standing when he did not describe the type of information typed into searches or how that information was embarrassing, invasive, or otherwise private).

He also fails to allege how his visits to facially non-financial or non-medical websites, like Zillow.com, or the other 20 unidentified websites involved collection of his private or sensitive information. *See Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *3 (E.D. Cal. Apr. 17, 2026) (dismissing complaint for lack of Article III standing and stating that "[t]he disclosure of information about what products Plaintiffs view on a sporting goods website does not qualify as 'highly offensive' as this information is not sensitive or private"); *see also Timothee v. Meta*

*Platforms, Inc.*, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) (finding that disclosing a plaintiff's access of a food-assistance website and sending targeted ads were not considered traditionally actionable or highly offensive).

Because Plaintiff failed to allege any embarrassing, invasive, or otherwise sensitive information that Pinterest collected about him, his alleged harms bear no resemblance to the common-law tort of intrusion upon seclusion, and he cannot establish the concrete injury required for Article III standing.

**B. Plaintiff Fails to Allege Standing Based on Statutory Violations**

Plaintiff cannot salvage his failure to allege Article III standing by asserting that Pinterest violated CIPA or the Wiretap Act. "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). In *Popa*, the Ninth Circuit squarely rejected the argument that a plaintiff satisfies Article III simply by alleging a defendant violated a statute enacted to "protect[ ] a substantive privacy right." 153 F.4th at 792. Rather than invoke a "one-size-fits-all approach" grounded in a "general right to privacy," a plaintiff must identify "a harm that [they] experienced that is remotely similar" to the harms protected by the four "discrete" privacy torts recognized at common law. *Id.* Plaintiff has not done so. *See Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Instead of pointing to any specific tort, [plaintiff] broadly contends that any invasion of a statutorily recognized privacy interest is sufficient to constitute an Article III injury. This is not enough.").

Because Plaintiff fails to allege a concrete injury—whether benchmarked to intrusion upon seclusion or grounded in statutory violations—his Complaint should be dismissed for Lack of Article III standing.

**V. <u>PLAINTIFF FAILS TO STATE ANY CLAIMS</u>**

Even if the Court holds that Plaintiff plausibly alleges standing, Plaintiff fails to state a claim for each of his six causes of action.

**A. Plaintiff's Intrusion Upon Seclusion Claim Fails**

To state a claim for intrusion upon seclusion, Plaintiff must allege facts showing that Pinterest "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" in a "manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286. Plaintiff fails to plausibly allege either element.

***1. Plaintiff Fails to Allege a Reasonable Expectation of Privacy***

Just as Plaintiff failed to allege a privacy interest for standing purposes, he cannot allege a reasonable expectation of privacy based on the web activities he actually alleges—which are essentially just visits to websites. The only information Plaintiff actually alleges was collected about him is information about his devices, browsers, visits to six websites (though not specific URLs), and unspecified "future web browsing activity." (Compl. ¶¶ 139, 142.) "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original).

Even if Plaintiff's allegations went beyond mere visits, "[s]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (quoting *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Pa. 2023)). The "difference in fora between online and in-person shopping outlets does not transform the generally public nature" of the act into a private one. *Farst*, 700 F. Supp. 3d at 230.

***2. Plaintiff Fails to Allege an Egregious or Highly Offensive Breach of Norms***

Plaintiff's intrusion upon seclusion claim also fails because he has not alleged any conduct by Pinterest that is highly offensive or egregious. A highly offensive intrusion is required for a claim for intrusion upon seclusion to be actionable.

*Hernandez*, 47 Cal. 4th at 288.

Precedent is clear that there is no "highly offensive intrusion of privacy" for the types of data allegedly collected here. The "disclosure" of "unique device identifier number[s] . . . does not constitute an egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Nor does the disclosure of "personal data," "geolocation information," name and identity, contact lists, or contents of communications through social media to third-party developers. *See id.*; *accord In re Google Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014). Indeed, the bar to state such a claim is so high that "[e]ven disclosure of personal information, including social security numbers" (which Plaintiff does not allege) "does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Plaintiff's conclusory allegations that Pinterest collects standard device, browser, and web traffic information reflect no more than "routine commercial behavior" and do not allege the conduct meeting the high bar of a highly offensive intrusion. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. July 18, 2022). Plaintiff's intrusion upon seclusion claim should be dismissed.

**B. Plaintiff's Section 631(a) Claim Fails**

Plaintiff does not plausibly allege a cause of action under CIPA § 631(a). Section 631(a) provides four distinct bases for liability. Cal. Penal Code § 631(a); *see Tavernetti v. Super. Ct.*, 583 P.2d 737, 741 (Cal. 1978). Plaintiff alleges violations of only clauses two and three. (Compl. ¶¶ 176–77.) Clause three requires a predicate violation of clause two. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024). Accordingly, Plaintiff must allege violation of clause two—that Pinterest attempted to read or learn the "contents" of communications obtained "in transit" to state a claim. Cal. Penal Code § 631(a). He fails to allege either element.

/ / /

/ / /

### ***1. Plaintiff Fails to Allege Pinterest Intercepted the "Contents" of His Communications***

Plaintiff's Section 631(a) claim fails at the threshold because he does not plausibly allege that Pinterest intercepted the "contents" of any electronic communication—i.e., "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiff's allegations are deficient in two respects: the specific examples derive from his counsel's investigation rather than his own experience, and the data categories he identifies constitute "record information," not "contents." The Complaint's examples of alleged "contents" are fatally deficient because they derive from counsel's investigation, not from any communication attributable to Plaintiff. The Complaint admits that "[a]s part of their investigation, Plaintiff's counsel found and conducted testing on several websites to provide a sample of [Pinterest's] widespread tracking[.]" (Compl. ¶ 122.) The excerpts of tracking cookies and URLs that follow (*Id.* ¶¶ 124–38) do not—and cannot—reflect the "contents" of any communication Plaintiff himself sent or received. Given the Complaint largely reveals what Plaintiffs' counsel investigated, it contains few, if any, allegations about what Plaintiff did on the alleged websites at issue.

Courts dismiss Section 631(a) claims for a failure to allege contents were intercepted when, as here, plaintiffs fail to allege what information they provided on a website—even if they describe how tracking technology functioned, generally or hypothetically. For example, in *Cousin v. Sharp Healthcare*, the plaintiffs alleged a healthcare-related website had the *hypothetical* ability to track sensitive patient data from a "book appointment" tool and to then share that information with Meta. 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023). But the court found the plaintiffs failed to allege "contents" under their Section 631(a) claims because they did not allege they actually used the website's "book appointment" tool as hypothetically described in the complaint and also because they did "not explain what personal or health information

they entered on the webpage, which was then subsequently shared with Meta." *Id*. at 1130. Similarly, in *Shah v. MyFitnessPal, Inc.*, though the plaintiffs repeatedly alleged the defendant generally enabled third parties to track information of website users, plaintiffs alleged only that they visited the website. 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026). They did not allege that "they personally engaged in any communications with the websites whose content could have been intercepted." *Id.*; *see also King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4–5 (E.D. Cal. June 9, 2025) (dismissing claim where plaintiff did "not allege she conducted the searches or visited the webpages provided in the examples").

Moreover, the data categories Plaintiff alleges Pinterest collected—device information, browser type, IP addresses, and website visits (Compl. ¶¶ 140, 142)—are "record information," not "contents." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing Section 631(a) claim for failure to allege content was intercepted when plaintiffs admitted IP addresses, locations, browser types, and operating systems were non-content information and only vaguely alleged "other website interactions"). "Pages viewed" and "URLs" are not "content" because they do not "constitute[] message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). Because the specific examples Plaintiff offers derive from counsel's investigation rather than his own experience, and because the data categories he identifies are "record information" rather than "contents," Plaintiff fails to state a claim under Section 631(a).

***2. Plaintiff Fails to Allege an Interception in Transit***

Plaintiff also fails to plead facts showing that Pinterest "intercepted" a communication while "in transit." Cal. Penal Code § 631(a). Interception must occur while the communication is being actively transmitted; once it reaches its recipient, it is no longer in transit. *See Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3

(C.D. Cal. Aug. 2, 2021) (communication must be "acquired during transmission"). Plaintiff's conclusory assertions of "real time" and "immediate[]" interception are insufficient. (*See* Compl. ¶¶ 1, 126-27, 133, 178.) "[U]sing the word 'intercept' repeatedly" is insufficient, absent specific facts to "make it plausible [defendant] is intercepting their data in transit." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (holding the "in transit" element of a Section 631(a) claim inadequately alleged when the complaint alleged "a sequence of events wherein Google the logs data, and then transmits a copy later").

This failure is incurable because Plaintiff's own allegations show that collection occurs *after* communications arrive at their intended destination. According to Plaintiff, users "communicate" with host websites by requesting certain URLs. (*E.g.*, Compl. ¶ 90.) When users enter a URL, the browser sends a GET request to the website, which responds by sending content back. *See In re Zynga Priv. Litig.*, 750 F.3d at 1101–02. Plaintiff does not allege that Pinterest captures individual keystrokes or any "real-time" information as entered into a browser. Plaintiff's own allegations thus demonstrate that any alleged collection occurred after the communication reached its intended destination—not while in transit.

Finally, Plaintiff's allegations regarding Pinterest's purported subsequent use of data to serve targeted ads or to create profiles describe centralized storage and subsequent use—not interception in transit. (*E.g.*, Compl. ¶ 106 (describing a compiling and augmenting of profiles and not a contemporaneous reading or learning of contents of communications); *id.* ¶ 129 ("Defendant then uses the information it collects to link the user to a deanonymized profile and adds any new information to that profile.").) In *Crano v. Sojern, Inc.*, the plaintiff alleged that a third-party web-marketer collected "as much information relating to a hotel guest as possible all from different sources [and] store[d] that information in a centralized location . . . where it matche[d] data points and create[d] detailed profiles." 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025). As a result, the plaintiff alleged a re-direction of data and

not a contemporaneous interception. *Id.*; *see also Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Whether Defendants access or even analyze inputs with Prudential's consent after they have been transmitted to the server and reassembled has no bearing on whether Defendants read the communications ***while they were in transit***." (emphasis added)). In conclusion, Plaintiff fails to plausibly allege a CIPA Section 631(a) claim under any of the section's clauses, and this claim should be dismissed.

### C. Plaintiff's Section 632 Claim Fails

California Penal Code Section 632 prohibits the use of "an electronic amplifying or recording device to eavesdrop upon or record" a "confidential communication" without the consent of all parties. Cal. Penal Code § 632(a). A "confidential communication" is defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." *Id.* § 632(c). Plaintiff's Section 632 claim fails because he does not allege Pinterest recorded or eavesdropped on a "confidential communication" within the meaning of the statute.

#### *1. Plaintiff Does Not Allege a Confidential Communication*

As a threshold matter, Plaintiff has not alleged that any confidential communications are at issue. While Plaintiff alleges that the Pinterest Tag is ***capable*** of collecting the contents of communications depending on what a user does on a given website, he does not allege that it collected the contents of *his* communications. *See supra* Section V.B.1. Because Plaintiff fails to identify any "contents" of his own communications that were intercepted, he necessarily fails to identify a "confidential communication" under Section 632.

Plaintiff also fails to allege that any of *his* purported communications were "confidential." He does not allege what, if anything, he entered on any website. *See Shah*, 2026 WL 216334, at *7 (dismissing wiretapping claim where plaintiffs failed to allege that they "personally engaged in any communications with the websites whose

content could have been intercepted"). California courts presume that internet communications do not reasonably give rise to an expectation of confidentiality, and plaintiffs must "show[] that there is something unique about these particular internet communications which justify departing from the presumption." *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) (citation omitted). Plaintiff fails to allege anything "unique" about his visits to publicly accessible consumer websites that would rebut this presumption. *See King*, 2025 WL 1635419, at *6 (dismissing Section 632 claim where, "[i]n light of Plaintiff's bare allegations regarding her interactions with Defendant's Website, a reasonable inference cannot be drawn that Plaintiff had a reasonable expectation of privacy in the communications [the third party] intercepted").

***2. Plaintiff Does Not Allege Recording or Eavesdropping***

Plaintiff's claim independently fails because he does not adequately allege that Pinterest "recorded" or "eavesdropped upon" any communication. His conclusory allegation that Pinterest "contemporaneously intercept[ed] and record[ed] Plaintiff's and Class Members' confidential communications" (Compl. ¶ 189) is a bare recitation of statutory elements insufficient under *Iqbal*. 556 U.S. at 678.

Plaintiff does not allege that Pinterest recorded any specific communication of his, nor facts from which the Court could infer that Pinterest contemporaneously overheard any communication he intended to be confined to himself and the website. What Plaintiff describes—the collection and processing of data *after* it has been received by the host website—is post-receipt data aggregation, not eavesdropping or recording. *See supra* Section V.B.2. Section 632 does not reach such conduct. *See Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (dismissing claims where plaintiffs' allegations spoke "only to how user information is catalogued and stored, not the initial interception of that information" because CIPA is "directed at the unauthorized interception of communications, not any subsequent storage and/or use").

**D. Plaintiff's Section 638.51(a) Claim Fails**

Plaintiff's CIPA Section 638.51(a) claim fails because a device that is capable of capturing the contents of communications is not a "pen register" under the statute.

Section 638.51(a) states that "a person may not install or use a pen register . . . without first obtaining a court order." Section 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents of a communication***." Cal. Penal Code § 638.50(b) (emphasis added).

Taking Plaintiff's own allegations at face value, the Pinterest Cookies and Tag fall outside the statutory definition of a "pen register." Plaintiff alleges that these technologies are capable of "captur[ing]" "routing, addressing, and signaling information" such as email addresses, IP addresses, geolocation data, device information, and phone numbers. (Compl. ¶¶ 203–04.) But he also alleges those same technologies collect and record and/or decode the contents of communications. (*See id.* ¶¶ 176, 187.) A device that does both cannot be a "pen register" under Section 638.50(b).

The statute's text is clear. A pen register is "a device or process" that records routing information "but not the contents of a communication." Cal. Pen. Code § 638.50(b). The exclusionary phrase "but not" creates a definitional boundary: a device that records both routing information and contents falls outside the definition. To read the statute otherwise would render the phrase "but not the contents of a communication" entirely superfluous—a result the Legislature plainly did not intend. *See In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) ("A core canon of statutory construction is the rule against surplusage: courts must construe a statute 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'") (citation omitted).

Courts interpreting the materially identical "trap and trace device" definition

have reached this conclusion. *See Kishnani*, 2025 WL 1745726, at *4 (holding that software was not a "trap and trace device" because plaintiff alleged it collected contents of communications); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025) (same); *Price v. Headspace, Inc.*, 2025 WL 1237977, at *2–3 (Cal. Super. Ct. Apr. 1, 2025) (sustaining demurrer and finding "the crucial distinction from other devices" is that a pen register is "designed to capture information about the communication, but not the content of the communication itself").

Plaintiff's allegations are distinguishable from cases finding a plausible Section 638.51(a) claim, where plaintiffs alleged collection of only routing information—not contents. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–29 (N.D. Cal. Oct. 9, 2025) (trackers "not alleged to collect the contents of [ communications], ***only*** the user's IP address"); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (plaintiff alleged only collection of IP addresses). Here, by contrast, Plaintiff alleges the Pinterest Tag collects ***both*** routing information ***and*** contents.

California's broader statutory scheme reinforces this reading. CIPA treats the interception of contents (Cal. Penal Code §§ 629.50, 631) as distinct from the collection of routing information via pen registers (Cal. Penal Code §§ 638.52–53), imposing far more stringent procedural requirements for wiretaps precisely because they capture contents. Collapsing the pen register definition to include devices that also collect contents would undermine this distinction and conflict with well-established Fourth Amendment jurisprudence recognizing that pen registers have "limited capabilities" and "do not acquire the contents of communications." *Smith v. Maryland*, 442 U.S. 735, 741–42 (1979).

Because Plaintiff alleges the Pinterest Cookies and Tag also collect the contents of communications, he necessarily alleges they are not pen registers. The Court should dismiss Plaintiff's Section 638.51(a) claim with prejudice.

### E. Plaintiff's Unfair Competition Law Claim Fails

California's UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff must demonstrate that he "has suffered injury in fact and lost money or property as a result of the unfair competition." *Id.* § 17204. Plaintiff's UCL claim fails for three independent reasons.

*First*, Plaintiff does not have statutory standing because he has not alleged that he lost money or property as a result of Pinterest's conduct. *See* Cal. Bus. & Prof. Code § 17204. He does not allege that he paid any money to any of the 26 websites, declined to purchase a product, or suffered any other economic harm. While Plaintiff generally alleges that Pinterest monetized his information (Compl. ¶¶ 16–17), he does not allege that he participated—or intended to participate—in any market for the sale of his personal information. Allegations of "unauthorized collection of personal information[,]" without more, are insufficient to establish an economic injury. *Low*, 900 F. Supp. 2d at 1028; *see Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). Furthermore, because Plaintiff fails to allege collection of information in which he has a legally protected privacy interest, he cannot establish that any profit derived therefrom was unjust. *See In re USA Today*, 2026 WL 932655, at *3 (N.D. Cal. Apr. 6, 2026).

*Second*, Plaintiff fails to allege his legal remedies are inadequate. The Complaint's UCL count seeks only restitution and disgorgement "to the extent Plaintiff does not have an adequate remedy at law." (Compl. ¶¶ 216.) A plaintiff seeking equitable relief under the UCL must plead that legal remedies are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Here, Plaintiff has alleged separate statutory violations under CIPA Sections 631, 632, and 638.51—each providing a statutory remedy at law. Accordingly, Plaintiff cannot demonstrate that his legal remedies are inadequate. *See Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026) (dismissing claim for equitable relief because plaintiffs "failed to allege that they lack an adequate remedy at law," and

noting that "[n]othing in the Complaint indicates that Plaintiffs' legal remedies are insufficient").

*Third*, Plaintiff fails to plead facts establishing "unlawful" or "unfair" conduct. Plaintiff asserts that Pinterest violated the "unlawful" prong through violations of the Wiretap Act, CIPA, the California Constitution, and intrusion upon seclusion. (Compl. ¶ 213.) Because each predicate claim fails as a matter of law, Plaintiff's UCL claim also fails. *See Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *16 (C.D. Cal. June 25, 2015) ("Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well.").

As to the "unfair" prong, Plaintiff's conclusory assertions that Pinterest "intentionally surveilled nearly every area of Plaintiff's and Class Members' lives" (Compl. ¶ 214) are insufficient. Plaintiff does not identify any concrete harm, and vague assertions of "surveillance" and "sale of data," without factual allegations tied to a specific injury do not state a claim.

### F. Plaintiff's Wiretap Act Claim Fails

Plaintiff's Wiretap Act claim fails for the same reasons his CIPA Section 631(a) claim fails: he does not plausibly allege that Pinterest intercepted the "contents" of any electronic communication attributable to him. His claim is also barred by the one-party consent exception.

The Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Courts apply the same "contents" standard as under CIPA Section 631(a). *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). As set forth in Section V.B.1, *supra*, the specific examples of data collection on which Plaintiff relies are the product of his counsel's investigation, not Plaintiff's own browsing activity. (Compl. ¶ 122.) This does not satisfy Plaintiff's pleading obligations. *See King,* 2025 WL 1635419, at *5 (dismissing claim where plaintiff did "not allege she conducted the searches or visited the webpages provided in the examples"). Moreover, the data

categories Plaintiff alleges Pinterest collected constitute "record information," not "contents." *See In re Zynga Priv. Litig.*, 750 F.3d at 1106; *supra* Section V.B.1. On this basis, Plaintiff's Wiretap Act claim fails.

His claim also fails due to the one-party consent exception. The Wiretap Act expressly exempts interceptions where "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). The Complaint alleges that the Pinterest Tag is code "that ***Pinterest clients implement on their website*** to track their users' website behavior" and that the website operators voluntarily installed it. (Compl. ¶ 27 (emphasis added); *id.* ¶¶ 125, 132.) A vendor that provides technology deployed at the direction of a website operator is "an extension" of that operator, and the operator's consent to the technology's deployment is consent to the interception. *See Graham*, 533 F. Supp. 3d at 832–33. Accordingly, the website operator's voluntary installation invokes the one-party consent exception. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (website owners are parties to digital communications sent by users of their websites); *Pena v. Gamestop*, Inc., 2023 WL 3170047, at *4 (S.D. Cal. Apr. 27, 2023) (website operator is "squarely within the party exception"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142–43 (3d Cir. 2015) (the Wiretap Act requires only one party's consent); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274–75 (3d Cir. 2016) (companies that place cookies are "parties to any communications that they acquired" (citation omitted)).

## VI. LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should be denied where "the pleading could not possibly be cured by the allegation of other facts." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). That is the case here. The deficiencies identified herein are not the product of inartful pleading—they reflect the fundamental inadequacy of Plaintiff's legal theories. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137–45 (E.D. Cal. 2021) (dismissing CIPA § 631(a), invasion of privacy, and

UCL claims without leave to amend where plaintiff failed to allege fact showing interception of communications in transit, an egregious breach of social norms, that sensitive information was collected, or that the plaintiff suffered an economic injury). The Court should dismiss the Complaint with prejudice.

## VII. CONCLUSION

For the foregoing reasons, Pinterest respectfully requests the Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: May 1, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Wynter L. Deagle*
WYNTER L. DEAGLE
ANNE-MARIE D. DAO
SAMUEL Z. HYAMS-MILLARD
DANIEL J. BIRMINGHAM
MARK RATWAY (*pro hac vice forthcoming*)

Attorneys for Defendant Pinterest, Inc.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Pinterest, Inc., certifies that this brief contains 6,911 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Wynter L. Deagle*
Wynter L. Deagle