**BURSOR & FISHER, P.A.**
Joshua R. Wilner (SBN 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (SBN 363482)
1330 Ave. of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTIAN CALCINES, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

PINTEREST, INC.,

Defendant.

Case No. 2:26-cv-02154-FMO-RAO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: June 18, 2026
Time: 10:00 a.m.
Ctrm: 6D
Judge: Hon. Fernando M. Olguin

## TABLE OF CONTENTS


PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFF HAS ARTICLE III STANDING ........ 2

II. PLAINTIFF ALLEGES AN INTRUSION UPON SECLUSION CLAIM ........ 4

III. PLAINTIFF ALLEGES A CIPA § 631 CLAIM ........ 6

A. Defendant Intercepted the "Contents" of Plaintiff's Communications with Various Websites ........ 6

B. Defendant's Interception Occurred "In Transit" ........ 7

IV. PLAINTIFF ALLEGES A CIPA § 632 CLAIM ........ 8

V. PLAINTIFF ALLEGES A CIPA § 638.51 CLAIM ........ 11

VI. PLAINTIFF ALLEGES AN ECPA CLAIM ........ 13

VII. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519 (C.D. Cal. Mar. 25, 2026) .......... 11

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 13

*Caldwell v. InMobi Pte Ltd*, 2026 WL 1162828 (N.D. Cal. Apr. 29, 2026) .......... 13

*de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 12

*Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... 4, 5

*Dellasala v. Samba TV, Inc.*, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 4, 14

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 7

*Drummer v. Costar Grp., Inc.*, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 11

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 12

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 3

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... passim

*Harris v. iHeartMedia, Inc.*, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .......... 4

*Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026) .......... 2

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024)....................7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................5

*In re Meta Android Privacy Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026)....................3

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025)....................11, 12

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d (cleaned up)....................11

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................4, 6, 7

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026)....................9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................1

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)....................10

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)....................passim

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024)....................10, 11

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)....................1

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)....................14

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026)....................1, 4, 5, 6

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)....................13

*Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) .......... 2

*Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 12

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 7

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 1, 5, 11, 14

*Roney v. Miller*, 705 F. App'x 670 (9th Cir. 2017) .......... 15

*Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 1, 11

*Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 1, 5, 11

*Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) .......... 3, 4

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 6

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 10

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) .......... 14

*Wiley v. Univ. Music Grp., Inc.*, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 11

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 10

**STATUTES**

18 U.S.C. § 2511(d) .......... 13

**INTRODUCTION**

Court after court has sustained allegations, like Plaintiff's, where unauthorized third parties track users across the Internet, compile that information into comprehensive profiles which contain details about numerous aspects of users' lives—or match users up to profiles with identifiers like IP addresses and device information—and disclose those profiles for use in advertising. *See*, *e.g.*, *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *7 (C.D. Cal. Apr. 15, 2026); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 871 (N.D. Cal. 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *11 (N.D. Cal. Jan. 27, 2026); *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 929 (N.D. Cal. 2023).

Plaintiff's allegations are no different. Plaintiff alleges that Defendant surveils him and other consumers across the Internet, "connect[ing] intimate details about their person and behavior to an individual's email address and phone number," creates or adds this information to detailed profiles of users that include their "beliefs, interests, and habits," and shares those profiles with other third parties "for targeted advertising." *See*, *e.g.*, Compl. ¶¶ 2, 25, 32, 38-39, 54, 76, 88, 96, 106, 119, 137. And Plaintiff alleges he was subject to these profiling practices. *Id.* ¶¶ 139-142. Defendant claims this is a "remarkable proposition." MTD at 11:21-22. It's not. As the above authorities make clear, surveilling consumers across the internet, where they conduct some of their most intimate activities, is neither normal nor legal.

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant claims Plaintiff lacks Article III standing because he ostensibly "cannot allege an interference with information relating to his person or private affairs or concerns" that was "highly offensive." MTD at 15:18-19, 16:28 (cleaned up). Defendant misapprehends Plaintiff's allegations.

In determining whether plaintiffs have alleged Article III standing, "courts in this Circuit have distinguished between tracking technologies that create such a cradle-to-the-grave profile of sensitive, personally revealing information gathered across the internet and those that are more reminiscent of a store clerk's observing shoppers and found that only the former confer standing." *Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *4 (E.D. Cal. Apr. 17, 2026) (cleaned up). Plaintiff's allegations fall into the former category.

Plaintiff alleges Defendant surveils consumers across the Internet, "connect[ing] intimate details about their person and behavior to an individual's email address and phone number," creates or adds this information to detailed profiles of users that include their "beliefs, interests, and habits," and shares those profiles with other third parties "for targeted advertising." *See*, *e.g.*, Compl. ¶¶ 2, 25, 32, 38-39, 54, 76, 88, 96, 106, 119, 137. And Plaintiff alleges he was subject to these profiling practices. *Id.* ¶¶ 139-142.

Defendants' reliance on *Popa v. Microsoft Corp*. is therefore misplaced. 153 F.4th 784 (9th Cir. 2025). In *Popa*, the Ninth Circuit found that recording activity on a pet supply store's website was akin to a store clerk observing a shopper. *Id.* At 791. But here, Defendant's tracking technologies compile the sorts of "cradle-to-grave profiles" that courts have found sufficient for Article III standing. *See*, *e.g.*, *Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196, 1201 (C.D. Cal. 2026) (Olguin, J.) (finding Article III standing where "defendant's tracking practices enable it to regularly collect personalized information when someone, like plaintiff, visits defendant's Website");

*Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (same where plaintiffs "adequately alleged that they were subject to these profile-building practices"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (same where "plaintiffs allege that OpenX compiled detailed user profiles by tracking plaintiffs' interactions across many websites, including sensitive browsing activity, without plaintiffs' knowledge or consent"); *In re Meta Android Privacy Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *4 (N.D. Cal. May 11, 2026) (same based on allegations that "Meta extensively collects browsing data, and through the Modified Pixel, non-consensually compiled detailed profiles linking that data to their Meta accounts"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."). These harms are analogous to "intrusion upon seclusion or a legal interest in unjustly earned profits," both of which are sufficient to confer standing. *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *4.[1]

Defendant argues that Plaintiff cannot base his injury on "general allegations of website visits." MTD at 16:2. Plaintiff doesn't. Again, the allegations here are about the comprehensive profiling conducted by Defendant across the Internet, *not* on Plaintiff's general online activity. "Accordingly, it does not matter whether [Plaintiff] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection … it encompasses how that collection allegedly allowed [Defendant] to: (1) build a profile reflecting his personal

[1] To the extent Defendant avers there must be an exact match between the harm alleged and a traditional privacy tort (MTD at 14:24-26), that requirement finds no place in case law. *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) ("[T]he alleged harm need not be an exact duplicate of a traditionally recognized harm to be analogous. A close analogue exists when the alleged and traditionally recognized harm are similar in kind rather than degree.") (cleaned up).

information; and (2) interfere with his ability to remain anonymous." *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025); *see also Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (finding Article III standing based on allegations that "website users are harmed not just by the collection of data, but by being identified and linked to comprehensive, non-anonymous profiles that are offered up for sale to a near endless supply of advertisers without knowledge or consent") (cleaned up).

Defendant also claims that its conduct was not "highly offensive." MTD at 16:28. Of course, courts have found that widespread, non-consensual profiling like that which Defendant engages in is "highly offensive." *See*, *e.g.*, *Gilligan*, 2026 WL 32259, at *2; *Krzyzek*, 817 F. Supp. 3d at 864. However, "[w]hether conduct was highly offensive can rarely be resolved at the pleading stage." *Manier*, 2026 WL 1295546, at *6 (cleaned up). And ultimately, it is the "kind of harm and not the degree [that] is relevant for determining whether an alleged injury-in-fact is concrete." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *2 (N.D. Cal. Apr. 21, 2026) (cleaned up); *Six*, 129 F.4th at 635 (noting "the Supreme Court has counseled against" evaluating standing based on "the *degree* of harm, rather than the *kind* of harm") (emphasis in original); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("[T]he Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing.").

Thus, Plaintiff has alleged an injury-in-fact sufficient for Article III standing.

## II. PLAINTIFF ALLEGES AN INTRUSION UPON SECLUSION CLAIM

Defendant argues Plaintiff fails to state an intrusion upon seclusion claim for largely the same reasons as it argued Plaintiff lacks Article III standing. Those arguments fail for the same reasons as above. *See* Argument § I, *supra*.

*First*, Defendant argues Plaintiff "cannot allege a reasonable expectation of privacy based on the web activities he actually alleges—which are essentially just visits to websites." MTD at 20:8-10. Again, Plaintiff doesn't. Defendant is arguing

against a strawman. The allegations here are about the comprehensive profiling conducted by Defendant across the Internet, *not* on Plaintiff's interactions on a single website. "Accordingly, it does not matter whether [Plaintiff] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection … it encompasses how that collection allegedly allowed [Defendant] to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1107.

Courts have roundly found the violation of a reasonable expectation of privacy based on widespread profiling like Defendant's. *See*, *e.g.*, *Krzyzek*, 817 F. Supp. 3d at 865 (finding a reasonable expectation of privacy where "OpenX allegedly tracks, compiles, and sells massive amounts of information on plaintiffs, without their knowledge that an OpenX pixel has been loaded onto a given website"); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *6 (N.D. Cal. Jan. 27, 2026) (same); *Manier*, 2026 WL 1295546, at *5 ("The manner of Defendant's data collection and subsequent usage of the data to create profiles even after Plaintiff's visit to certain sites is comparable to the logic in [*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)]."). Defendant attempts to equate its conduct to "shopping on a public website, like shopping in a public store." MTD at 20:17-18 (cleaned up). For the reasons outlined above, however (*see* Argument § I, *supra*), Defendant's "conduct is very different from being observed by a retailer while shopping in a store." *Krzyzek*, 817 F. Supp. 3d at 865.

*Second*, Defendant argues Plaintiff "has not alleged any conduct by Pinterest that is highly offensive or egregious." MTD at 20:26-27. However, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Riganian*, 791 F. Supp. 3d at 1088 (cleaned up). But even were this Court to wade into these factual waters, courts have found "the alleged aggregation, synthesis, and sale of comprehensive … data of individuals without their knowledge is" highly offensive. *See id.*; *see also*, *e.g.*,

*Manier*, 2026 WL 1295546, at *6 ("A reasonable factfinder could determine the alleged unauthorized collection of personally identifiable information and use of that information [to] create detailed profiles of individuals of individuals through its cookie syncing across multiple unrelated websites was an unacceptable intrusion in violation of public policy.") (cleaned up); *Gilligan*, 2026 WL 32259, at *2; *Krzyzek*, 817 F. Supp. 3d at 864.

Thus, Plaintiff has plausibly alleged an intrusion upon seclusion claim.

## III. PLAINTIFF ALLEGES A CIPA § 631 CLAIM

### A. Defendant Intercepted the "Contents" of Plaintiff's Communications with Various Websites

Defendant argues that "the data categories Plaintiff alleges Pinterest collected—device information, browser type, IP addresses, and website visits—are record information, not contents." MTD at 23:10-12 (cleaned up). Defendant is wrong. As courts have explained, "a basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be content." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (cleaned up). The communications here fall into the latter category. As examples, Plaintiff alleges that Defendant collected the addresses of the properties searched for on the Zillow website, or the monetary amounts sent on the Western Union website. Compl. ¶¶ 127, 136. This information constitutes the "substance, purport, or meaning of th[e] communication." *James*, 701 F. Supp. 3d at 955 (cleaned up); *see also Krzyzek*, 817 F. Supp. 3d at 867 ("URLs which disclose search terms that reveal website users' personal interests, queries, and habits are contents of communications under CIPA and ECPA.") (cleaned up); *Gilligan*, 2026 WL 32259, at *3 (interception of contents where information collected included "search queries or specific pages Plaintiffs viewed").

Further, Plaintiff alleges he visited both of those websites and Defendant's Trackers operated in this same manner on his visits, "setting cookies on Plaintiff Calcines's browser, so he c[ould] be identified on other websites, and intercepting his

communications with the websites." Compl. ¶¶ 139-140. This raises the plausible inference that the types of information Plaintiff alleges were intercepted by Defendant on these websites generally were intercepted when Plaintiff himself visited these websites. *See James*, 701 F. Supp. 3d at 956 ("Plaintiffs have alleged that Oracle intercepted, *e.g.*, information about the webpages they viewed and searches they conducted. This makes it unlikely that Plaintiffs are simply implicating record information…"); *Krzyzek*, 817 F. Supp. 3d at 867 ("OpenX also argues that the complaint is deficient because plaintiffs do not identify which specific URLs they visited while using the websites that OpenX purportedly tracked. The Court disagrees." (cleaned up)).

**B. Defendant's Interception Occurred "In Transit"**

Defendant argues Plaintiff has not alleged an "in transit" interception because "Plaintiff's own allegations show that collection occurs *after* communications arrive at their intended destination." MTD at 24:9-10 (emphasis in original). ButSection 631(a) prohibits eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state*." (Emphasis added). Thus, "Section 631's protections extend explicitly to the beginnings and ends of communications." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (sustaining claim where "[e]ven if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device").

To that end, courts have sustained CIPA § 631(a) claims involving the simultaneous duplication of internet communications to third parties. *See*, *e.g.*, *Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (sustaining CIPA § 631 claim involving Meta Pixel where "Plaintiffs allege that, after they entered their Search Terms, the Search Terms were replicated and sent in parallel to the tracking entities"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("Courts have held allegations of simultaneous duplication and

interception of communications sufficient to plead 'interception' while 'in transit' under CIPA at the motion to dismiss stage."). For instance, in *Krzyzek*, the court rejected the same argument that Defendant makes here that "plaintiffs' interactions with websites [were] not intercepted while in transit because any interception occurs after any communications arrived at their intended destination." *Krzyzek*, 817 F. Supp. 3d at 868. As the *Krzyzek* court noted:

> [t]he complaint adequately alleges that after the OpenX pixel is loaded onto a user's browser, then it intercepts the detailed, full-string URL from each page of a website a user visits, thereby intercepting the user's communications with the website regarding which articles they want to view. This process allegedly occurs in transit, and begins within seconds of the user reaching a partner website.

*Id.* (cleaned up). Plaintiff's allegations here are materially identical. Plaintiff alleges that when he visited the website, "[t]he Pinterest Tag immediately loads tracking cookies onto the individual's browser." Compl. ¶ 126. The Pinterest Tag then records information "simultaneously with the user's corresponding action on a website." *Id.* ¶ 178. Indeed, the screenshots in the Complaint show Defendant intercepting user information at the same time as the user visits or loads a webpage. *Id.* ¶¶ 94, 127, 136. Thus, Plaintiff has plausibly alleged his communications were intercepted "in transit."

## IV. PLAINTIFF ALLEGES A CIPA § 632 CLAIM

Defendant repeats its argument that its Trackers did not intercept "the contents of [Plaintiff's] communications." MTD at 25:21. That argument fails for the same reasons as above. *See* Argument § III.A, *supra*. Plaintiff alleges he visited "Zillow.com, WesternUnion.com, cvs.com, healthline.com, hrblock.com, and americanexpress.com" (Compl. ¶ 139), and Defendant recorded information including "the amount sent and the currency exchange requested" and the details of the homes Plaintiff would have viewed. Compl. ¶¶ 127, 136. This information constitutes the "contents" of Plaintiff's communications.

Defendant further avers that "Plaintiff also fails to allege that any of his

purported communications were confidential." MTD at 25:25-26 (cleaned up). Not so; Plaintiff includes similar allegations to those in analogous recent cases. For instance, in *Jones v. Skullcandy, Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), the plaintiff alleged third parties "collect[ed] information such as detailed browsing histories and product preferences, … personally identifiable information including names, email addresses, and Facebook/Google account identifiers, real-time behavioral data showing consumer interests and purchasing patterns, and demographic and psychographic profiles that enable targeted marketing." *Id.* at *18 (cleaned up). The court sustained the plaintiff's CIPA § 632 claim because the plaintiffs had "a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties." *Id.*

So too here. Plaintiff alleges Defendant records personally identifiable information, including but not limited to e-mail addresses, mobile advertising identifiers, phone number, and IP addresses, which Defendant uses to "match[] an App or Website user to a larger record of their web and app activity" that it maintains. *See, e.g.*, Compl. ¶¶ 40, 54, 61, 64, 81, 109, 129. Defendant also records "millions of communications with websites and apps through the interception of full-string URLs," and Defendant adds these URLs "and any information can be gleaned or inferred from [them]" to user profiles it maintains. *Id.* ¶¶ 88, 96. Through this surveillance, Defendant "connects intimate details about their person and behavior to an individual's email address and phone number," creates or adds to detailed profiles of users that include their "beliefs, interests, and habits," and shares those profiles with other third parties "for targeted advertising." *See, e.g.*, *id.* ¶¶ 2, 25, 38-39, 106, 119, 137. Thus, as in *Jones*, Defendant violated Plaintiff's reasonable expectation that "the immense amount of personally identifiable and browsing data allegedly collected by [Defendant] would not be shared with third parties." *Jones*, 2026 WL 699819, at *18.

In addition, Plaintiff alleges his information was collected on websites

including, but not limited to, "WesternUnion.com, cvs.com, healthline.com, hrblock.com, and americanexpress.com." Compl. ¶ 139. Courts have sustained CIPA § 632 claims when information from medical or financial websites is collected by a third party. *See*, *e.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (sustaining CIPA § 632 claim based on interception of information from chat portal on Kaiser Permanente's website); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 n.10 (2006) (noting "the strong privacy interest most persons have with regard to the personal financial information"). Indeed, as to cvs.com specifically, the Department of Health and Human Services previously published guidance warning HIPAA-covered entities like CVS about the use of tracking technologies like Defendant's.[2]

Last, Defendant argues that "Plaintiff does not allege that Pinterest recorded any specific communication of his, nor facts from which the Court could infer that Pinterest contemporaneously overheard any communication he intended to be confined to himself and the website." MTD at 26:18-20. This is a regurgitation of Defendant's "in transit" argument, which fails for the reasons set forth above. *See* Argument § III.B, *supra*. Defendant claims *Lau v. Gen Digital Inc.*, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024), supports its argument, but *Lau* did not even involve a CIPA § 632 claim. *Lau* dismissed the plaintiffs' ECPA and CIPA § 631 claims because "there [was] no unknown third party": the *Lau* plaintiffs installed the defendant's product "with the expectation that [the defendant] would have access to the plaintiffs' browsing activity." *Id.*, at *2. The quote Defendant takes out of context

---

[2] USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html. Although this guidance was vacated by a decision out of the Northern District of Texas, its admonitions are still relevant.

was actually about whether the plaintiffs consented to the conduct at issue. *Id.*, at *1.

## V. PLAINTIFF ALLEGES A CIPA § 638.51 CLAIM

Defendant argues that "[b]ecause Plaintiff alleges the Pinterest Cookies and Tag also collect the contents of communications, he necessarily alleges they are not pen registers." MTD at 28:26-27. Of course, Defendant also argues that the Trackers did not collect the "contents" of any communications (*see* MTD at 22:3-4), so to the extent Defendant is correct, its argument as to Plaintiff's CIPA § 638.51 claim is moot.

In any event, even though the Trackers may also record the contents of Plaintiff's communications, that would not be dispositive. As an initial matter, it may be that differing processes collect "addressing" information as opposed to "contents," thus not violating the statute's prohibitions. *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ("If the various functionalities within the Meta Pixel operate independently from one another, as plaintiffs plausibly allege, the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications."). Indeed, "courts regularly allow both wiretap and pen register claims to proceed." *Id.* at 1154; *see also*, *e.g.*, *Gilligan*, 2026 WL 32259, at *3-4; *Krzyzek*, 817 F. Supp. 3d at 865-70; *Semien*, 2026 WL 216333, at *7-11; *Selby*, 2025 WL 2950164, at *3-4; *Riganian*, 791 F. Supp. 3d at 1091-94.

Regardless, courts confronted directly with this question have overwhelmingly found that a tracker may still be a "pen register" even if it records both "addressing" information *and* the "contents" of a communication, so long as it does not *only* "record[] … the contents of communications." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1155 (cleaned up); *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *5 (C.D. Cal. Oct. 22, 2025) ("[I]t is not apparent from the face of CIPA that it excludes pen registers that may also collect some additional information."); *Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519, at *8 (C.D. Cal. Mar. 25, 2026) (same); *Wiley v. Univ. Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17,

2025) (rejecting argument that a "pen register" "cannot apply to devices that *also* collect the contents of a communication") (emphasis in original); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 (N.D. Cal. 2025) (same); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *8 (N.D. Cal. Dec. 22, 2025) (same); *see also Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *7 (N.D. Cal. May 21, 2026) ("The legislative history … supports a broad, rather than narrow, construction of the term pen register.").

This reasoning is well-supported. CIPA § 638.50(b)'s language is ambiguous as to "whether it establishes two entirely nonoverlapping zones of regulation, as [Defendant] contends, or whether a device that collects wiretap content and pen register metadata is subject to both CIPA's wiretap provisions and its pen register provisions." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153. "Given CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications." *Id.* Indeed, Defendant's "argument would allow an *unauthorized* pen register to circumvent judicial oversight so long as that device included a modicum of nonessential wiretapping technology." *Id.* at 1154 (emphasis in original).[3] Defendant cites a few cases going the other way (MTD at 27:28-28:8), but none of those courts engaged in the same statutory analysis as the authorities Plaintiff cites herein.

Here, Defendant does not dispute its Trackers are "devices or processes" that recorded or decoded dialing, routing, addressing, or signaling information, such as e-mail addresses, IP addresses, geolocation data, device information, and phone

---

[3] On the other hand, this does not mean that holding "the pen register definition to include devices that also collect contents would undermine … and conflict with well-established Fourth Amendment jurisprudence." MTD at 28:21-23. The technology can be subject to both the heightened requirements of the Fourth Amendment and the pen register statute depending on its capabilities. But allowing a technology to escape pen register status solely because it collects a "modicum" of content "would allow any entity to avoid CIPA's pen register provisions simply by employing more intrusive forms of technology." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1154.

numbers. Compl. ¶¶ 203-204; *see also Caldwell v. InMobi Pte Ltd*, 2026 WL 1162828, at *1 (N.D. Cal. Apr. 29, 2026) (sustaining CIPA § 638.51 claim based on collection of "geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details transmitted in outgoing electronic communications by their devices") (cleaned up). Whether the Trackers also recorded the content of any communications is immaterial. Thus, Plaintiff has plausibly alleged a CIPA § 638.51 claim.

## VI. PLAINTIFF ALLEGES AN ECPA CLAIM

Defendant argues "Plaintiff's Wiretap Act claim fails for the same reasons his CIPA Section 631(a) claim fails: he does not plausibly allege that Pinterest intercepted the 'contents' of any electronic communication attributable to him." MTD at 30:16-18. This is wrong for the reasons set forth above. *See* Argument § III.A, *supra*.

Defendant also argues the website operator's consent to Defendant's interception of Plaintiff's communications precludes his ECPA claim. MTD at 31:13-14 ("[T]he website operator's voluntary installation invokes the one-party consent exception."). Not so. It is true that there can be no violation of ECPA if "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(d). An exception to this exception exists, however, where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

Courts have found the "crime-tort" exception applies where plaintiffs "alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles," that this "association of their data with preexisting user profiles violated state law," *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021), and the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers," *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *see also Krzyzek*, 817 F. Supp. 3d at 869 ("Courts have held that the association of

Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception.") (cleaned up); *Riganian*, 791 F. Supp. 3d at 1091 ("[I]f … LiveRamp unlawfully intercepted, packaged, and sold personal information without consent at scale, that conduct will not be excused on the grounds that LiveRamp acted in pursuit of profit."); *Dellasala*, 2026 WL 1138358, at *10 (finding exception satisfied where plaintiffs "alleged Samba tortiously invaded their privacy to sell their personal data for a profit"). In addition, "the disclosure and use of Plaintiffs' information for advertising can plausibly constitute an independent invasion of privacy beyond the act of intercepting the information alone, satisfying the crime-tort exception." *Gilligan*, 2026 WL 32259 at *3.

Here, Plaintiff has alleged that (i) Defendant used the information it collected from Plaintiff on various websites to link him to a comprehensive profile that was then disclosed to further third parties for advertising; and (ii) Defendant built on that profile by conglomerating Plaintiff's interests and beliefs as derived from his browsing activity. *See*, *e.g.*, Compl. ¶¶ 2, 25, 32, 38-39, 54, 76, 88, 96, 106, 119, 137. Such allegations are sufficient to satisfy the crime-tort exception.

## VII. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND

Defendant argues that leave to amend should be denied because "[t]he deficiencies identified herein are not the product of inartful pleading—they reflect the fundamental inadequacy of Plaintiff's legal theories." MTD at 31:25-27. As made clear throughout this brief, multiple courts have sustained claims similar to Plaintiff's.

Moreover, the Ninth Circuit has emphasized that "[u]nder [the] futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by *any* amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up) (emphasis added); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the

allegation of other facts"). Here, it is far from certain that Plaintiff's claim is futile. Thus, should the Court grant Defendant's Motion (and it should not), Plaintiff respectfully requests leave to amend to cure any defects in his allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court grants the Motion, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).[4]

Dated: May 28, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Max S. Roberts
Max S. Roberts

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455

[4] Plaintiff voluntarily dismisses his UCL claim without prejudice.

Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiff*

**LOCAL RULE 11-6.2 CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,830 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Max S. Roberts*
Max S. Roberts