SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal. Bar No. 296501
wdeagle@sheppard.com
ANNE-MARIE D. DAO, Cal. Bar No. 282632
adao@sheppard.com
DANIEL J. BIRMINGHAM, Cal. Bar No. 357351
dbirmingham@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

SAMUEL Z. HYAMS-MILLARD, Cal. Bar No. 317941
shyams-millard@sheppard.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

MARK RATWAY (*pro hac vice forthcoming*)
mratway@sheppard.com
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: 469.391.7457
Facsimile: 469.391.7400

Attorneys for Defendant Pinterest, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CHRISTIAN CALCINES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PINTEREST, INC.,<br><br>Defendant. | Case No. 2:26-cv-02154-FMO-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANT PINTEREST, INC.'S MOTION TO DISMISS**<br><br>Date: June 18, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 6D<br><br>Judge: Hon. Fernando M. Olguin<br>Magistrate: Hon. Rozella A. Oliver |

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | 3 |
| I. | INTRODUCTION | 8 |
| II. | PLAINTIFF LACKS ARTICLE III STANDING. | 8 |
| III. | PLAINTIFF FAILS TO ALLEGE INTRUSION UPON SECLUSION. | 13 |
| IV. | PLAINTIFF FAILS TO ALLEGE A CIPA § 631 CLAIM. | 15 |
| | A. Plaintiff Fails to Cure His Deficient "Contents" Allegations. | 15 |
| | B. Plaintiff's "In Transit" Arguments Are Unavailing. | 17 |
| V. | PLAINTIFF FAILS TO ALLEGE A CIPA § 632 CLAIM. | 20 |
| VI. | PLAINTIFF FAILS TO ALLEGE A CIPA § 638.51 CLAIM. | 23 |
| VII. | PLAINTIFF FAILS TO ALLEGE AN ECPA CLAIM. | 26 |
| VIII. | LEAVE TO AMEND SHOULD BE DENIED. | 28 |
| IX. | CONCLUSION | 29 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. NCAA*
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) .......... 25

*In re Apple Data Priv. Litig.*
--- F. Supp. 3d ---, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 23

*Blaker v. NetScout Systems, Inc.*
Case No. 25STCV31283 (Cal. Super. Ct. L.A. Cnty. May 27, 2026) .......... 25

*Bly-Magee v. California*
236 F.3d 1014 (9th Cir. 2001) .......... 29

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 27

*Crano v. Sojern, Inc.*
2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 19

*de Ayora v. Inspire Brands, Inc.*
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 25

*Deivaprakash v. Condé Nast Digital*
798 F. Supp. 3d 1106 (N.D. Cal. 2025) .......... 10, 12, 13

*Dellasala v. Samba TV Inc.*
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 11, 28

*Doe I v. Google LLC*
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......... 26

*Doe v. Eating Recovery Ctr. LLC*
806 F. Supp. 3d 1109 (N.D. Cal. Oct. 17, 2025) .......... 18, 19, 20

*Doe v. Tenet Healthcare Corp.*
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 20

*Drummer v. Costar Grp.*
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 25

*In re Facebook Internet Tracking Litigation*
956 F.3d 589, 598–99 (9th Cir. 2020) .......... 9, 10

*Gabrielli v. Haleon US Inc.*
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 25

*Gabrielli v. Motorola Mobility LLC*
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 10

*Garcia v. Anschutz Ent. Grp., Inc.*
2026 WL 1278912 (C.D. Cal. May 5, 2026) .......... 27

*Gilligan v. Experian Data Corp.*
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 10, 15, 17

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 14

*Harris v. iHeartMedia, Inc.*
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .......... 11

*Hassid v. Alex and Ani, LLC*
816 F. Supp. 3d 1196 (C.D. Cal. 2026) .......... 11

*Heerde v. Learfield Comm'cns, LLC*
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 20

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272 (2009) .......... 13

*Hill v. NCAA*
7 Cal. 4th 1 (1994) .......... 13

*James v. Walt Disney Co.*
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 12, 17

*Jones v. Skullcandy, Inc.*
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 21

*Karwowski v. Gen Digital, Inc.*
2025 WL 3002610 (9th Cir. Oct. 27, 2025) .......... 22

*King v. Hard Rock Cafe Int'l (USA), Inc.*
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 16, 21

*Kishnani* v. *Royal Caribbean Cruises, Ltd.*
2025 WL 1745726 (N.D. Cal. 2025) ..................................................24

*Krzyzek v. OpenX Techs., Inc.*
817 F. Supp. 3d 857 (N.D. Cal. 2026) ..................................10, 14, 15, 17, 20, 28

*Lau v. Gen Digital Inc.*
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024), *aff'd*, *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) ..................................22

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................15

*Manier v. Triple Lift Inc.*
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ..................................14, 15

*Marden v. LMND Med. Grp., Inc.*
2024 WL 4448684 (N.D. Cal. July 3, 2024) ..................................27

*In re Meta Android Privacy Litig.*
2026 WL 1279416 (N.D. Cal. May 11, 2026) ..................................10

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..................................................26

*In re Meta Pixel Tax Filing Cases*
793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ..................................24

*Mitchener v. CuriosityStream, Inc.*
815 F. Supp. 3d 845 (N.D. Cal. 2025) ..................................................24

*Ortiz v. Foris Dax, Inc.*
2026 WL 1430720 (N.D. Cal. May 21, 2026) ..................................16, 25

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) ..................................8, 9, 10, 11, 12

*R.C. v. Sussex Publishers, LLC*
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ..................................19

*Riganian v. LiveRamp Holdings, Inc.*
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..................................15, 28

*Semien v. PubMatic Inc.*
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ..................................14

*Shah v. MyFitnessPal, Inc.*
--- F. Supp. 3d ----, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ................16, 20

*Shah v. Talentbridge, Inc.*
2026 WL 1507888 (C.D. Cal. May 28, 2026)......................................................9

*Shulman v. Group W Prods., Inc.*
18 Cal. 4th 200 (1998)..........................................................................................13

*Sisti v. Bosley Inc.*
--- F. Supp. 3d ---, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026).....................19

*Six v. IQ Data Int'l, Inc.*
129 F.4th 630 (9th Cir. 2025).......................................................................12, 13

*Skidgel v. Cal. Unemployment Ins. Appeals Bd.*
12 Cal. 5th 1 (2021)..............................................................................................25

*Smith v. Cap. One Financial Corp.*
2012 WL 1669347 (N.D. Cal. May 11, 2012) ..................................................13

*Smith v. Rack Room Shoes, Inc.*
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)......................................................17

*Sussman v. Am. Broad. Cos., Inc.*
186 F.3d 1200 (9th Cir. 1999)..............................................................................26

*Torres v. SeatGeek, Inc.*
2026 WL 1495202 (N.D. Cal. May 28, 2026) ........................................8, 13, 14

*Wiley v. Univ. Music Grp., Inc.*
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ..................................................25

*Yockey v. Salesforce, Inc.*
745 F. Supp. 3d 945 (N.D. Cal. 2024)..................................................................21

*Zarif v. Hwareh.com, Inc.*
789 F. Supp. 3d 880 (S.D. Cal. 2025) ..................................................................26

<u>Statutes</u>

18 U.S.C. § 2511(2)(d) ..........................................................................................26

18 U.S.C. § 2511(d)................................................................................................26

Cal. Penal Code § 631(a) ........ 17, 18, 19, 20

Cal. Penal Code § 632(a) ........ 22

Cal. Penal Code § 632(c) ........ 21

Cal. Penal Code § 638.50(b) ........ 23, 25

## I. INTRODUCTION

Plaintiff's Opposition does not overcome the fundamental defects of the Complaint. Plaintiff attempts to convert generalized allegations about modern web-tracking technology into claims about the interception of his own private communications, without alleging what communication of his was intercepted or what sensitive information about him was obtained.

Plaintiff's Opposition confirms a factual deficiency that dooms every claim: Plaintiff still does not allege what private communication of his was supposedly intercepted, what sensitive information about him Pinterest supposedly learned, or what he supposedly did on any of the websites he allegedly visited. *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *2–3 (N.D. Cal. May 28, 2026) (plaintiff could only allege non-offensive collection of record information when he "provided no private information to the website: no account, no purchase, no form submitted, no search terms"). Instead, the Opposition relies on abstract allegations of "profile building" and examples drawn from counsel's investigation of websites—not from Plaintiff's experience. Departing from the concrete injury analysis in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), Plaintiff argues that profiling allegations alone establish Article III standing and intrusion upon seclusion. That allegation is insufficient to establish Article III standing or to state any CIPA, ECPA, or intrusion upon seclusion claim. Having abandoned his UCL claim, Plaintiff's remaining claims should also be dismissed with prejudice.

## II. PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff argues he has Article III standing based purely on the allegations of profile building. (ECF No. 23 ("Opp.") at 2:14–20.) But "profile building" in the abstract is not a concrete injury. The threshold question is straightforward: what private fact about Plaintiff does the Complaint allege Pinterest learned? The Opposition still does not provide an answer. It identifies no medical condition Plaintiff searched, no money transfer Plaintiff initiated, no tax information Plaintiff

entered, and no financial data Plaintiff reviewed. Plaintiff does not attempt to argue that browsing on Zillow could generally involve sensitive or private information, and nor could it—no more than such information would be sensitive or private if members of the public observed him as he walked into an "open house" showing for a property for sale. *See, e.g.*, *Shah v. Talentbridge, Inc.*, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (finding no "protectable privacy interest in . . . generic search terms that may reveal the searcher's interests but are not linked to [p]laintiff's identity"). Without allegations that Pinterest obtained embarrassing, invasive, or otherwise private information about Plaintiff, there is no concrete privacy injury. In making this argument, Plaintiff attempts to distinguish his Complaint from the facts of *Popa*, 153 F.4th 784, and argues that he need not allege he had a reasonable expectation of privacy, *at all*, and that profile building is per se highly offensive. These arguments should be rejected.

First, Plaintiff argues his allegations are unlike *Popa* and more like cases involving "cradle-to-grave profiles." (Opp. at 2:21–24.) But in the Complaint, Plaintiff fails to allege ***his*** embarrassing, invasive, or private information was collected at all. (*See* ECF No. 1 ("Compl.") ¶¶ 139–45.) In fact, unlike the plaintiff in *Popa*, Plaintiff does not even allege he shopped on any of the websites. He alleges no other browsing activities save for "visits." Thus, Plaintiff fails to allege any broad, sustained, long-term collection of his data that Pinterest used to plausibly build a "cradle-to-grave profile" for him. This standard is from *In re Facebook Internet Tracking Litigation*, 956 F.3d 589, 598–99 (9th Cir. 2020), where the plaintiffs alleged Facebook collected and correlated browsing histories with "sensitive" personal information—including "employment history and political and religious affiliations"—to build "highly personalized" and "cradle-to-grave" profiles. *Id.* at 599, 604. At most, Plaintiff alleges there was a tracking technology present on websites he visited; he does not allege the kind of long-term, sensitive, user-linked data collection that supported standing in the "cradle-to-grave profile"

cases he invokes.

Here, Plaintiff does not allege he is a Pinterest user or that Pinterest tracked him in the same way Facebook tracked its users and built profiles of them in *In re Facebook*. In *Popa*, which the facts in Plaintiff's Complaint more closely resemble, the Ninth Circuit reaffirmed the requirement to allege sensitive information in order to plead a harm analogous to an intrusion upon seclusion and found no concrete injury when the plaintiff failed to identify collection of "embarrassing, invasive, or otherwise private information." 153 F.4th at 791.

Moreover, each of the authorities Plaintiff cites to distinguish *Popa* on standing involves facts not present here:

- In *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 861 (N.D. Cal. 2026), the plaintiffs alleged collection of sensitive information such as health insurance applications as well as sociopolitical views and article selections.

- In *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1106 (N.D. Cal. 2025), the plaintiffs alleged collection of sensitive information including "geographic locations, incomes, and preferences."

- In *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026), the plaintiffs alleged that Experian's tracking technology "collected information on 1% of all web traffic . . . in July 2024 alone," and that they "'navigated through' and 'read' articles on [the relevant] websites."

- In *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025), which pre-dates *Popa*, the court found standing based on fraud—unalleged here—arising from continued tracking after users selected "reject all cookies."

- In *In re Meta Android Privacy Litig.*, 2026 WL 1279416, at *6 (N.D. Cal. May 11, 2026), the court found that the plaintiffs alleged Meta's behavior went "far beyond" routine commercial behavior when it "surreptitiously circumvented browsers' sandboxing protections in order to perfectly link users' browsing behavior with their Meta accounts," and that "[b]rowser developers, researchers, and members of the public were shocked and concerned when this behavior came to

light."

- In *Dellasala v. Samba TV Inc.*, 2026 WL 1138358, at *4 (N.D. Cal. Apr. 21, 2026), the plaintiffs alleged that "detailed information" was collected "over time" across multiple streaming services and devices and used to "create profiles identifying individuals based on personal attributes such as political leanings, or those who watched Pride Month or Black History Month programming."
- In *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1–2 (N.D. Cal. Jan. 29, 2026), the court found standing for a single pen register claim based in significant part on the "broad" dissemination of user information collected from *multiple third-party trackers* and offered to an unbounded supply of advertisers not alleged here.

Each of those cases involved allegations absent here—collection of specific searches, specific page views, specific sensitive inputs, detailed personal attributes, or the deployment of multiple third-party trackers. Plaintiff alleges none of that.

While Plaintiff also relies on *Hassid v. Alex and Ani, LLC*, that case is off-point for solely involving a trap-and-trace claim, and the parties completed briefing before the Ninth Circuit decided *Popa*. 816 F. Supp. 3d 1196 (C.D. Cal. 2026). This case is also distinguishable because the plaintiffs alleged that website visitors were "never informed that the [W]ebsite is collaborating with the Chinese government to obtain their phone number and other identifying information." *Id.* at 1200. No such sensitive or concerning disclosure to a foreign government is involved here. Accordingly, Plaintiff's claims are unlike those in his authorities cited to argue he alleges "cradle-to-grave" profiling, and Plaintiff's attempt to distinguish *Popa* fails.

Next, Plaintiff contends that his allegations satisfy the elements of an intrusion upon seclusion. Plaintiff effectively concedes that his theory depends on treating "profile building," by itself, as enough to substitute for the recognized intrusion upon seclusion elements. It is not. *First*, he argues "it does not matter whether [he] had a reasonable expectation of privacy." (Opp. at 3:20–4:1 (citing

*Deivaprakash*, 798 F. Supp. 3d at 1107).) But *Deivaprakash* addresses *statutory* standing for a pen register claim and only discusses Article III standing offhand in a footnote, without meaningful analysis. *See generally* 798 F. Supp. 3d at 1100–08. *Deivaprakash*'s conclusion that "it does not matter whether [plaintiff] had a 'reasonable expectation of privacy' in the information collected" because the privacy violation at issue "allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous" is divorced from *Popa's* Article III concrete-injury analysis. *See Popa*, 153 F.4th at 791. In any event, Plaintiff fails to establish profile-building or an "interference" with an ability to remain "anonymous" is analogous to a traditionally recognized privacy tort. Plaintiff also argues that simply alleging profile building pleads conduct that is "highly offensive." But Plaintiff's authorities are distinguishable. *See supra* at 10:11–11:10. In sum, in addressing the intrusion elements, Plaintiff agrees they are applicable but contends that alleging profile building excuses the requirement of pleading them. It does not.

Plaintiff also cites several pre-*Popa* authorities to argue he is not required to allege an "exact match" to a traditional privacy tort. (Opp. at 4:18–20 (citing *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (pre-dating Popa by nearly two years)).) But that is not what Pinterest argues. (ECF No. 18 ("Mot.") at 14:19-19:7.) Plaintiff's alleged harms are simply not alike *in kind* to any of the privacy harms identified in *Popa*. In addition, Plaintiff's reliance on *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025), for the proposition that no precise tort match is required does not withstand scrutiny. *Six* is a Fair Debt Collection Practices Act case decided months before *Popa* involving an unwanted debt-collection letter sent in violation of an express instruction to communicate only with counsel. *Id.* at 632. Setting aside that it is factually far afield of the present case when compared to *Popa*, *Six* still performed the required benchmarking analysis, identifying intrusion upon seclusion as the specific historical analogue and

confirming that the harm was similar in kind to it; it did not dispense with benchmarking altogether. *Id.* at 634.

Plaintiff must establish he suffered a concrete injury. *SeatGeek, Inc.*, 2026 WL 1495202, at *2–3. His allegations of profile building fail to do so under Ninth Circuit authority because they never identify any private communication of his, any sensitive information of his, or any concrete intrusion into his seclusion.

**III. PLAINTIFF FAILS TO ALLEGE INTRUSION UPON SECLUSION.**

Plaintiff's intrusion claim fails for the same reason his standing argument fails: he does not allege Pinterest intruded upon any private matter of his. He alleges only website visits, plus generalized assertions that Pinterest engaged in "widespread profiling." That is not enough to plead either a reasonable expectation of privacy or a highly offensive intrusion.

Again citing *Deivaprakash*, Plaintiff repeats that "it does not matter whether [he] had a reasonable expectation of privacy in the information collected . . . ." (Opp. at 5:3–5.) The plaintiff in *Deivaprakash* did not allege an intrusion upon seclusion claim. *See generally* 798 F. Supp. 3d at 1100–08. *Deivaprakash* does not rewrite the elements applicable to intrusion upon seclusion claims. A "plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or **data source**." *Smith v. Cap. One Financial Corp.*, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012) (emphasis added) (quoting *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998)). Under this correct standard, Plaintiff's allegations fall short.

Whether a reasonable expectation of privacy existed "rests on an examination of 'customs, practices, and physical settings surrounding particular activities.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)). And here, Plaintiff never alleges the underlying conduct that would make those website visits private—such as entering health information, financial information, tax information, or other sensitive data. In cases of alleged

data collection, "[c]ourts consider the customs, practices, and circumstances surrounding the data collection, including the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Plaintiff pins his argument entirely on the mere accusation of profile building because he cannot plausibly allege Pinterest collected *his* sensitive data or created a profile about him. Even worse, he leaves 20 out of the 26 websites purportedly at issue unidentified.

In the cases Plaintiff cites, the plaintiffs alleged collection of sensitive and personal data. *See, e.g.,* K*rzyzek,* 817 F. Supp. 3d at 864; *Semien v. PubMatic Inc.*, 2026 WL 216333, at *1–2 (N.D. Cal. Jan. 27, 2026) (involving information collected about "age, credit risk, yearly household income, affluence level, field of study, and confidence in keeping a budget," as well as "language spoken in the home, when last career change occurred, and levels of investable assets," and also "ketamine therapy treatment options"); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *1 (C.D. Cal. Apr. 15, 2026) (tracking of searches for "information and articles *pertaining to her personal health*" (emphasis added)).

Plaintiff's argument on the "highly offensive" element fares no better. Plaintiff urges the Court to defer this inquiry, contending that "[w]hether conduct was highly offensive can rarely be resolved at the pleading stage." (Opp. at 4:11–12 (citing *Manier*, 2026 WL 1295546, at *6).) But that principle does not relieve Plaintiff of his obligation to plead facts from which a highly offensive intrusion can plausibly be inferred. Courts routinely resolve this element on the pleadings where, as here, the complaint fails to allege collection of sensitive information. *E.g.*, *SeatGeek, Inc.*, 2026 WL 1495202, at *6–7. Put differently, Plaintiff asks the Court to assume that any use of tracking technology for alleged "profile building" is per se highly offensive regardless of what information was actually gathered about him. No authority he cites goes that far. His allegations thus do not clear the "highly

offensive" bar. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that even disclosure of highly personal information such as social security numbers is not "highly offensive" enough to meet the "high bar for an invasion of privacy claim").

Nevertheless, Plaintiff also contends that "the alleged aggregation, synthesis, and sale of comprehensive . . . data of individuals without their knowledge is" per se highly offensive. (Opp. at 5:22–24 (quoting *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1088 (N.D. Cal. 2025)).) But again, in each of the authorities Plaintiff cites—*Manier*, *Gilligan*, *Krzyzek*, and *Riganian*—the plaintiffs alleged collection of specific categories of sensitive data or other aggravating facts entirely absent from this Complaint. *E.g.*, *Manier*, 2026 WL 1295546, at *1 (tracking of personal health searches); *Gilligan*, 2026 WL 32259, at *2 (collection of information on 1% of all web traffic and button click events); *Krzyzek*, 817 F. Supp. 3d at 864 (tracking of sociopolitical views); *Riganian*, 791 F. Supp. 3d at 1087 (profiles categorized by cancer status, religion, sexual orientation, and union membership). Plaintiff cannot bootstrap his way to a highly offensive intrusion by citing cases involving the kind of sensitive data he fails to allege.

## IV. PLAINTIFF FAILS TO ALLEGE A CIPA § 631 CLAIM.

### A. Plaintiff Fails to Cure His Deficient "Contents" Allegations.

Plaintiff's Opposition fails to clarify how he personally engaged in any communication whose contents Pinterest supposedly intercepted. That omission is dispositive. Plaintiff invokes the general rule that "URLs which disclose search terms that reveal website users' personal interests, queries, and habits are contents of communications under CIPA and ECPA." (Opp. at 6:20–25 (quoting *Krzyzek*, 817 F. Supp. 3d at 867).) But that rule only underscores the problem—the Complaint does not allege Plaintiff revealed any personal interests, habits, or queries. Plaintiff's examples he identifies—such as transfer amounts, exchange requests, or property details—come from counsel's investigation of certain websites, not from

allegations about Plaintiff's conduct. Courts have squarely held that "[l]isting general categories of information that Plaintiffs allege the cookies are capable of collecting (without alleging such information was actually collected) does not suffice[.]" *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *5–6 (N.D. Cal. May 21, 2026) (emphasis added) (collecting cases). Alleging that Plaintiff "visited" some of those same sites does not bridge that gap. (*See* Compl. ¶¶ 139–45.)

Plaintiff's Opposition tacitly concedes the point. Rather than allege what he actually did on any website, Plaintiff asks the Court to infer that whatever counsel's investigators observed must also have occurred during Plaintiff's own visits. (Opp. at 6:26–7:4.) But the Complaint never alleges that Plaintiff transferred money on Western Union, entered tax information on H&R Block, or engaged in any other sensitive activity. A pleading cannot be saved by importing counsel's investigation into Plaintiff's personal experience. *See, e.g.*, *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("Notably, Plaintiff's FAC provides examples of the types of 'full-string URLs' allegedly intercepted by Meta, but Plaintiff does not allege she conducted the searches or visited the webpages provided in the examples. Thus, Plaintiff has not alleged that the 'contents' of her communications were intercepted."); *see also Shah v. MyFitnessPal, Inc.*, --- F. Supp. 3d ----, 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026) (dismissing Section 631 claim where plaintiffs did "not allege that . . . they personally engaged in any communications with the websites whose content could have been intercepted.").

Plaintiff cannot salvage this deficiency by pointing to his allegation that he "visited" the same websites counsel investigated. (Compl. ¶¶ 139–40.) Visiting a website is not the same as communicating sensitive information on it. Without allegations of what Plaintiff actually input, searched, selected, or viewed, there is no basis to infer interception of "contents." Plaintiff does not allege his actions on any website that would have produced the kind of content-rich URLs his counsel's investigation uncovered.

Plaintiff's authorities confirm rather than cure this deficiency. In *James*, the plaintiffs "alleged that Oracle intercepted . . . information about the webpages they viewed *and* searches they conducted." *James*, 701 F. Supp. 3d at 956 (emphasis added). Thus, they alleged that they conducted searches on the relevant website—a fact Plaintiff does not allege here. (Compl. ¶¶ 139–40.) Nor did the plaintiffs in *James* depend on an inference that collection occurred the same way it did during their counsel's investigation. Plaintiff also does not allege, like one of the plaintiffs in *James*, that Pinterest collected the "specific webpages he viewed." *Contrast James*, 701 F. Supp. 3d at 949, *with* (Compl. ¶ 5). In *Krzyzek*, the court found that plaintiffs "sufficiently alleged that OpenX intercepted the contents of their communications while they navigated through various websites, including Bon Appetit and Covered California, such that OpenX has adequate notice of plaintiffs' claims." 817 F. Supp. 3d at 867. But unlike in *Krzyzek*, Plaintiff here leaves 20 of the 26 websites he purportedly visited unnamed and alleges no "navigat[ing] through" on any of them. Plaintiff's other authorities are unavailing. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (plaintiffs plausibly alleged interception of "their" communications where defendant allegedly "collected readable versions of their personal identifying information . . . generated when they entered that information into a website form."); *Gilligan*, 2026 WL 32259, at *2 (same where plaintiffs premised allegations upon the collection of data concerning "their activity" as they "navigated through" websites). Plaintiff cannot credibly claim he has provided the same adequate notice of the contents at issue.

**B. Plaintiff's "In Transit" Arguments Are Unavailing.**

The Court should reject Plaintiff's selective quotation of Section 631(a) to argue the phrase "*or is being sent from, or received at any place within this state*" extends the statute's protections to the "beginnings and ends of communications." (Opp. at 7:14–17 (emphasis in original).) Plaintiff cannot escape that Section 631(a)

prohibits a person who "*reads, or attempts to read, or to learn the contents* or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). The statute does not prohibit mere collection or duplication; it prohibits reading, attempting to read, or learning the contents of a communication while it is in transit. Plaintiff's Opposition never addresses whether the Complaint alleges that Pinterest read, attempted to read, or learned the *contents of any communication*—at any point in the transmission process. That omission is fatal.

Plaintiff contends that the Pinterest Tag "immediately loads tracking cookies" and records information "simultaneously with the user's corresponding action on a website." (Opp. at 8:11–16 (citing Compl. ¶¶ 126, 178).) But even accepting these allegations as true, they describe collection—not reading, attempting to read, or learning the contents of communications. Simultaneity of receipt is not the same as contemporaneous understanding of contents. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. Oct. 17, 2025)(holding that Section 631(a) plaintiffs must allege defendants "do something more than just intercept the communication while it is in transit to be held liable"). The Complaint's allegations reveal that any effort to understand the substantive meaning of the data occurs later, *through alleged matching and processing*. (*See* Compl. ¶ 25 (describing Pinterest Tag's disclosure to other third parties and a subsequent combination of data by those third parties with other information), ¶ 27 (collection and subsequent transmission "back to Pinterest" to send targeted ads)). Plaintiff further fails to allege that there is any real-time or instantaneous bucketing of information into a specific user profile. *Id.* at ¶ 96 ("Pinterest . . . collects the URLs[,] and any information that can be gleaned or inferred from those URLs are added to the profiles that Pinterest has for that particular Website or App user."). Thus, Pinterest's purported process of matching data or redirecting it to profiles is the first possible moment in time when

an attempt at reading, attempting to read, or learning the contents of communications allegedly occurs.

Plaintiff's theory thus reduces to the proposition that after-the-fact profile building constitutes an interception in transit. It does not. As courts have recognized, "[r]eading or learning the contents of a communication requires 'some effort at understanding the substantive meaning' of the communication." *Eating Recovery Ctr. LLC*, 806 F. Supp. 3d at 1117 (citation omitted). The after-the-fact building of profiles based on data received does not plausibly allege an interception in transit. *See Crano v. Sojern, Inc.*, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (allegations a defendant collected information, stored it in a centralized location, and matched it to data points to create detailed profiles only pleaded a re-directing of data to a third party). Allegations like those here of receipt and *subsequent combination* of data from multiple sources do not plead a contemporaneous actual or attempted reading or learning of the contents or meaning of messages. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing Section 631(a) claim where technology is used to view, read, and process data only after it is stored); *Sisti v. Bosley Inc.*, --- F. Supp. 3d --- , 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) ("Plaintiff has failed to provide any support for the illogical notion that Bosley could have disclosed Plaintiff's information to third parties *while* that information was still in transit from Plaintiff *to Bosley*. . . . Plaintiff provides even less support for the notion that Meta or Facebook could have intercepted **'and read' the contents of** his communications while they were still in transit to Bosley, as required for a claim under CIPA." (emphasis added)). Plaintiff's own theory therefore negates the element he must plead.

Thus, Plaintiff's argument that he alleges simultaneous duplication to a third party fails to address whether his allegations of profile building and data matching here negate his "in transit" allegations (which they do). Moreover, the authorities he

cites involve distinguishable communications and technologies and fail to address the "read, attempt to read, or learn the contents of" requirement. *See Heerde v. Learfield Comm'cns, LLC*, 741 F. Supp. 3d 849, 854 (C.D. Cal. 2024) (alleging interception of search terms into search bars on websites); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (describing Section 631(a) in terms of whether a plaintiff "listens" to a communication while in transit and not addressing an argument that there was no reading, attempt to read, or learning the contents of health-related communications in a provider's healthcare portal); *Krzyzek*, 817 F. Supp. 3d at 868 (not addressing the "read, attempt to read, or learn the contents of" requirement).

One court held that it is "virtually impossible to apply [CIPA] to the online world." *Eating Recovery Ctr. LLC*, 806 F. Supp. 3d at 1119. Applying Section 631 to the data analytics technology alleged here is the newest example of that impossibility. In sum, Plaintiff does not allege any communication of his whose contents Pinterest intercepted, and his own allegations show that any supposed "learning" of information occurred only through later matching and profile construction.

## V. PLAINTIFF FAILS TO ALLEGE A CIPA § 632 CLAIM.

Plaintiff's Opposition confirms that his Section 632 claim fails for three independent reasons: he does not allege contents attributable to him, he does not allege a confidential communication of his, and he does not allege contemporaneous recording or eavesdropping.

On contents, Plaintiff offers nothing new. Plaintiff repackages the same counsel-investigation examples discussed under Section 631. But because Plaintiff still does not allege that he engaged in those activities himself, his Section 632 theory fails for the same reason. *See MyFitnessPal, Inc.*, 2026 WL 216334, at *7 (dismissing where plaintiffs did not allege "they personally engaged in any communications with the websites whose content could have been intercepted").

Second, Plaintiff's confidentiality argument fares no better. Plaintiff relies on *Jones v. Skullcandy, Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), where the plaintiff alleged collection of "personally identifiable information including names, email addresses, and Facebook/Google account identifiers" along with "[r]eal-time behavioral data showing consumer interests and purchasing patterns." *Id.* at *4. But Plaintiff alleges no such thing about his own experience. He alleges only that he "visited" six named websites. (Compl. ¶ 139.) He does not identify communications he made that he intended to be "confined to the parties thereto." Cal. Penal Code § 632(c). Plaintiff's attempt to analogize to *Jones* thus fails precisely because *Jones* involved the kind of specific, personal allegations that are absent here. Visiting a publicly accessible website, without more, does not give rise to a reasonable expectation of confidentiality. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) (plaintiffs must "show[] that there is something unique about these particular internet communications which justify departing from the presumption" that internet communications are not confidential (citation omitted)); *King*, 2025 WL 1635419, at *6 (dismissing Section 632 claim where, "[i]n light of Plaintiff's bare allegations regarding her interactions with Defendant's Website, a reasonable inference cannot be drawn that Plaintiff had a reasonable expectation of privacy in the communications [the third party] intercepted"). Plaintiff thus tries to infer confidentiality from the domain names alone. That is not enough.

Plaintiff also invokes the purportedly sensitive nature of certain websites he visited—CVS, Western Union, H&R Block—to establish confidentiality. (Opp. at 9:25–10:2.) But this argument underscores the very deficiency Pinterest identified: Plaintiff does not allege he engaged in any sensitive activity on those websites. He does not allege he filled a prescription on cvs.com, transferred money on WesternUnion.com, or filed taxes on hrblock.com. Merely visiting cvs.com does not establish a confidential communication any more than walking into a CVS store

establishes a confidential interaction. Without allegations that Plaintiff actually entered sensitive medical, financial, or other personal information on any of these websites, no inference of confidentiality is warranted. The Opposition never closes that gap.

Third, Plaintiff's response to Pinterest's recording and eavesdropping argument is unavailing. Plaintiff's answer is essentially to relabel post-collection processing as contemporaneous eavesdropping. Section 632 does not permit that move. Plaintiff dismisses it as "a regurgitation of Defendant's 'in transit' argument." (Opp. at 10:17–19.) It is not. Section 632 independently requires that the defendant "record" or "eavesdrop upon" a communication—i.e., contemporaneously overhear it. Cal. Penal Code § 632(a). Plaintiff never explains how Pinterest's alleged conduct satisfies this element. He describes the non-contemporaneous, after-the-fact compilation of data into profiles and subsequent use for advertising. (Compl. ¶¶ 106, 129); *see Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024), *aff'd*, *Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) (dismissing complaint where allegations spoke "only to how user information is catalogued and stored, not the initial interception of that information"). Plaintiff attempts to distinguish *Lau* by incorrectly claiming it "did not even involve a CIPA § 632 claim." (Opp. at 10:21). *Lau* did involve a Section 632 claim; plaintiffs simply failed to respond to defendant's arguments. *See Karwowski v. Gen Digital, Inc.*, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (affirming *Lau* and noting "[t]he district court properly dismissed Appellants' CIPA § 632 claim because Appellants failed to respond to the arguments raised in Gen Digital's motion to dismiss this claim"). Further, the principle *Lau* articulates—that CIPA targets the unauthorized interception of communications, not subsequent data processing—applies with equal force to Section 632's requirement of contemporaneous recording or eavesdropping.

/ / /

## VI. PLAINTIFF FAILS TO ALLEGE A CIPA § 638.51 CLAIM.

Plaintiff's Section 638.51 argument fails because he wants it both ways. To support his other claims, he alleges the Pinterest Tag collected substantive contents. To support his pen-register claim, he argues the same technology qualifies as a device that records routing information "but not the contents of a communication." When faced with that contradiction, he speculates that some unpleaded sub-process might exist. None of those theories states a plausible Section 638.51 claim.

Regarding Plaintiff's first argument, he is incorrect that Pinterest's argument for dismissal of Plaintiff's CIPA § 638.51 claim is moot. Plaintiff pleads inconsistent causes of action, and he does not plead them in the alternative. *In re Apple Data Priv. Litig.*, --- F. Supp. 3d --- , 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026) (explaining that claims under Section 632 (involving contents) and Section 638.51 (excluding contents) are inconsistent and thus a basis for dismissal of the Section 638.51 claim). To the extent there is an inconsistency, it is based on claims Plaintiff alleges, not arguments Pinterest makes in responding to the Complaint.

Second, Plaintiff speculates that "it *may* be that differing processes collect 'addressing' information as opposed to 'contents,' thus not violating the statute's prohibitions." (Opp. at 11:9–11 (emphasis added).) That formulation is a concession that the operative Complaint does not plead such a theory.

The Complaint alleges that the Pinterest Cookies and Pinterest Tags *are* the "device[s] or process[es]" under CIPA Section 638.50(b). (Compl. ¶¶ 204–05 (emphasis added).) The Complaint does not allege, as Plaintiff now tries to argue in Opposition, that there are differing processes among the Cookies or Tags that collect "addressing" information but not contents. (*Id.*) Plaintiff cannot invent entirely new theories in his Opposition with no supporting facts in the Complaint. *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *2–3 (holding that because plaintiffs' theory that certain "processes within Apple's Apps, not the applications as a whole"

operated as pen registers was not alleged in the operative pleading, plaintiffs could "not amend the FAC through their brief" (citation omitted)). *In re Meta Pixel Tax Filing Cases* is distinguishable based on the alleged, distinct functionalities of the Meta Pixel. *See* 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) (complaint alleging "that the Pixel is a 'small library of functions' with an array of capabilities that allows the website owner to do a variety of things"). Here, in contrast to *In re Meta Pixel Tax Filing Cases*, the Complaint does not plead facts about the Pinterest Tag or Cookies that plausibly allege distinct functionalities or processes that separately or independently collect "addressing" data. (*See, e.g.*, Compl. ¶¶ 32–39 (describing how Pinterest's cookies generally work but not describing them as a distinct bundling of processes or functionalities).) Thus, Plaintiff fails to allege a Section 638.51 claim based on a separate, distinct "process" within the alleged tracking technologies.

Third, Plaintiff argues a tracker may still be a pen register even if it records both addressing information and the contents of a communication so long as it does not only record the contents of communications. (Opp. at 11:20–23.) This argument is contrary to the statutory language of CIPA, and hastily dismisses authorities Pinterest cites in its Motion finding that technology alleged to collect contents cannot qualify as a trap and trace device under the trap and trace definition in CIPA Section 638.50(c) that closely mirrors the pen register definition. *See Kishnani* v. *Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726, at *4–5 (N.D. Cal. 2025) (holding that software was not a "trap and trace device" because plaintiff alleged it collected contents of communications); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851–52 (N.D. Cal. 2025) (same). Plaintiff's suggestion that those cases did not engage the statutory text is wrong; each did. *See Kishnani*, 2025 WL 1745726, at *4; *Mitchener*, 815 F. Supp. 3d at 851–52 Plaintiff's construction asks the Court to read "but not the contents of a communication" as though it said "but not only the contents of a communication." The statute says no

such thing.

In addition, Plaintiff's proposed construction fails to harmonize Sections 638.50 and 638.51 with each other and CIPA as a whole—in contrast to Pinterest's proposed construction. *See Skidgel v. Cal. Unemployment Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021) ("[W]e construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. . . . We must harmonize the various parts of the enactments by considering them in the context of the statutory framework as a whole." (cleaned up) (citation omitted)). Immediately after the "but not" limitation in Section 638.50(b), the next sentence states devices or processes the definition of pen register "does not include." If the Legislature meant to exclude devices that *only* record or decode contents, it could have expressly done so by writing the contents-exclusion as "but not *only* contents of communications." It did not, so Plaintiff's proposed construction should be rejected.

Plaintiff's authorities do not persuade otherwise. *Ortiz* did not adopt Plaintiff's construction, and *Drummer* and *Anderson* involved only pen-register claims, not the inconsistent contents allegations Plaintiff pleads here. 2026 WL 1430720, at *5–6; *Drummer v. Costar Grp.*, 2025 WL 3190656, at *1–6 (C.D. Cal. Oct. 22, 2025); *Anderson v. NCAA*, 2026 WL 925519, at *8 (C.D. Cal. Mar. 25, 2026). The remaining cases involved fraudulent opt-out banners or preference settings and are factually distinct. *Wiley v. Univ. Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17, 2025); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 (N.D. Cal. 2025); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *8 (N.D. Cal. Dec. 22, 2025). Plaintiff cites no California appellate authority adopting his reading. The Court should reject it.

Finally, a recent California Superior Court decision concluded that Section 638.51 does not apply to the internet. In *Blaker v. NetScout Systems, Inc.*, Case No. 25STCV31283 (Cal. Super. Ct. L.A. Cnty. May 27, 2026), the court sustained a demurrer without leave to amend, reasoning that the statutory scheme's repeated

references to "telephone line," "originating number," and "dialing" information confirm the Legislature was addressing telephonic, not internet, communications. This conclusion regarding the inapplicability of Section 638.51 to the internet further militates in favor of rejecting Plaintiff's proposed construction.

## VII. PLAINTIFF FAILS TO ALLEGE AN ECPA CLAIM.

Plaintiff effectively concedes that his ECPA claim rises or falls on the crime-tort exception. (Opp. at 13:16–17 (quoting 18 U.S.C. § 2511(d)).) He cannot deny that, under his own allegations, the website operators voluntarily implemented the Pinterest Tag. (Compl. ¶ 27 (emphasis added); *id.* ¶¶ 125, 132.) The only question, then, is whether Plaintiff plausibly alleges Pinterest acted for the primary purpose of committing some independent criminal or tortious act. He does not. Rather, Plaintiff argues that the crime-tort exception applies because Pinterest used data it intercepted to match Plaintiff's data to existing user profiles and profited from it. (Opp. at 13:21–23.) This argument fails.

The crime-tort exception provides that even when one party consents, an interception is unlawful if the interceptor acted "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). "It is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety[.]'" *Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). In other words, a plaintiff "must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'" *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (internal quotation marks and citations omitted) (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)).

Here, Plaintiff fails to allege injuring Plaintiff tortiously was a primary motivation or a determining factor in Pinterest's actions. Plaintiff does not allege

that Pinterest intercepted communications in order to publicly disclose private facts about him, or otherwise independently injure him. He alleges ordinary commercial targeting.

*First*, even Plaintiff's allegations of profile-building under his ECPA claim merely allege violations of law. (Compl. ¶ 233 ("Here, as alleged above, the association of Plaintiff's data with preexisting user profiles is a further use of Plaintiff's data that satisfies the crime-tort exception, because it violates state law, including the CIPA, intrusion upon seclusion, and invasion of privacy." (cleaned up and citation omitted)).)

*Second*, the Complaint repeatedly alleges the purpose for any interception (or collection) was to serve targeted advertisements. Paragraphs that Plaintiff cites in Opposition bear this out. (*See, e.g.*, Compl. ¶ 2 ("Pinterest collects this information to identify users of the Pinterest social media platform and ***serve them with advertisements*** …." (emphasis added)).) Thus, the crime-tort exception does not apply. *Garcia v. Anschutz Ent. Grp., Inc.*, 2026 WL 1278912, at *6 (C.D. Cal. May 5, 2026) ("Based on the facts alleged in the FAC, there do not seem to be any tortious or criminal act independent of the collection, interception, and distribution of Plaintiff's data."). Nothing in the Complaint transforms a consented-to interception into one undertaken for the *primary* purpose of committing a separate tort or crime. Moreover, the cases cited by Plaintiff involve serious underlying tort violations concerning sensitive data and/or violations of statutes not at issue here. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067, 1079 (N.D. Cal. 2021) (plaintiffs plausibly pled an underlying intrusion upon seclusion tort because the allegations concerned data collected in "private browsing mode, which is often used to prevent others from learning the user's most private and personal interests" such as sexual interests/orientation or political and religious views); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *1, *4 (N.D. Cal. July 3, 2024) (plaintiffs plausibly pled an underlying Confidentiality of Medical Information Act violation

based on interception of searches for highly "sensitive health issues []such as mental health conditions or erectile dysfunction"); *Krzyzek*, 817 F. Supp. 3d at 867 (plaintiffs plausibly pled an underlying Section 631 violation where the intercepted contents included "specific articles or pages the plaintiffs viewed" where plaintiffs alleged they were tracked on sensitive health and political websites); *Riganian*, 791 F. Supp. 3d at 1087 (plaintiffs plausibly pled an underlying intrusion upon seclusion tort where the information collected and profiles thereby created were categorized by "people with cancer, union members, Muslims, Jewish people, African Americans, poor people, payday loan prospects, online gamblers, unemployed individuals who were seen at clinics/hospitals and users of the LGBT dating app Grindr." (internal quotations omitted)); *Dellasala*, 2026 WL 1138358, at *1, *4 (plaintiffs plausibly pled an underlying intrusion upon seclusion tort where they alleged defendant intercepted plaintiffs' "private video-viewing in real time" and created and sold "profiles identifying individuals based on personal attributes such as political leanings, or those who watched Pride Month or Black History Month programming").

Because Plaintiff fails to allege facts supporting application of the crime-tort exception, his ECPA claim should be dismissed.

## VIII. LEAVE TO AMEND SHOULD BE DENIED.

Plaintiff's abandonment of his UCL claim underscores that amendment would be futile. The remaining defects are not the product of inartful pleading. Plaintiff's standing and intrusion theories fail because he does not allege that Pinterest obtained any sensitive or private information about him. His Sections 631 and 632 theories fail because he does not allege contents attributable to him or contemporaneous interception of his communications. His Section 638.51 theory fails because it depends on an unpleaded and speculative "different processes" theory raised for the first time in Opposition. And his ECPA theory fails because his own allegations establish third-party consent and plead only ordinary advertising motives. Because

these are not omissions that Plaintiff can cure, leave to amend should be denied. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

## IX. CONCLUSION

For the reasons argued in Defendant Pinterest, Inc.'s Motion to Dismiss and in this Reply, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: June 4, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Wynter L. Deagle*
WYNTER L. DEAGLE
ANNE-MARIE D. DAO
SAMUEL Z. HYAMS-MILLARD
MARK T. RATWAY
DANIEL J. BIRMINGHAM

Attorneys for Defendant Pinterest, Inc.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Pinterest, Inc., certifies that this brief contains 6,983 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Wynter L. Deagle*
Wynter L. Deagle